**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SMAR EQUIPAMENTOS INDUSTRIAS LTDA,.      Chapter 15
SMAR COMERCIAL LTDA., and VALBLOCK
INDUSTRIA E COMERCIO LTDA.      Case No.:

     Debtors in a Foreign Proceeding.
_____/

**VERIFIED PETITION FOR ORDER GRANTING**
**RECOGNITION OF FOREIGN MAIN PROCEEDING**
**PURSUANT TO §§ 1515 AND 1517 OF THE BANKRUPTCY CODE**

Alexandre Borges Leite (the "Foreign Representative"), the duly appointed foreign representative of Smar Equipamentos Industrias Ltda., Smar Comercial Ltda., and Valblock Indústria e Comércio Ltda. (the "Debtors"), files this *Verified Petition for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code* (the "Verified Motion"), seeking entry of an Order granting (i) recognition of the Debtors' bankruptcy proceedings pending before the Second Civil Court of Sertãozinho, São Paulo, Brazil (the "Brazilian Court"), Case No. 0010153-96.2013.8.26.0597 (the "Brazilian Proceeding") pursuant to 11 U.S.C. § 1517[1]; (ii) related relief pursuant to sections 1520 and 1521 of the Bankruptcy Code; and (iii) any other and further relief which may be available under the Bankruptcy Code. In support of this Verified Motion, the Foreign Representative respectfully states as follows:

---

[1] Unless otherwise specified herein, all statutory references shall be to Title 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code").

## PRELIMINARY STATEMENT

1.      The Foreign Representative files this Verified Chapter 15 Petition for Recognition of a Foreign Proceeding (the "Petition") pursuant to section 1504 of the Bankruptcy Code seeking recognition of the Brazilian Proceeding as a "foreign main proceeding" as defined in section 1502(4).

2.      The Declaration of Alexandre Borges Leite (the "Declaration"), made under penalty of perjury, addressing the requirements of § 1515(c) and Federal Rule of Bankruptcy Procedure 1007(a)(4), is attached hereto as **Exhibit "A".**

3.      The Order granting the Court-Approved Reorganization of the Debtors, Order converting the reorganization proceedings into liquidation proceedings, and the Order appointing me and my firm as the Foreign Representative of the Debtors attached to the Declaration. *See* Ex. A.

4.      The Debtor's Statement of Corporate Ownership under Fed. R. Bankr. P. 1007(a)(4) and 7007.1 is attached hereto as **Exhibit "B"**.

5.      The Petition, this Verified Motion, and the accompanying Declaration thereto demonstrate that the Brazilian Proceeding should be recognized as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

**6.**      The Foreign Representative seeks the type of relief that chapter 15 was designed to provide, and the Brazilian Proceeding and this Petition meet all the requirements for recognition and the requested relief.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and sections 109 and 1501 of the Bankruptcy Code.

8.      This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

9.      The city of Sertãozinho, São Paulo, Brazil is the Debtors' center of main interests, where they are incorporated and maintain their principle places of business.

10.     Venue is proper in this district under 28 U.S.C. § 1410 as, among other things, the Debtors have approximately US$1,500 deposited on retainer with Sequor Law, P.A.

## BACKGROUND AND BASIS FOR RECOGNITION

11.     The Declaration sets forth in detail the background and basis for recognition.  *See* Ex. A.

12.     The Foreign Representative has satisfied each of the requirements for recognition of the Debtor and the Trustee under Chapter 15 of the Bankruptcy Code, as follows:

(a)     The Foreign Representative qualifies as a "foreign representative" under section 101(24) of the Bankruptcy Code by virtue of his appointment as judicial manager by the Brazilian Court, which grants him the power to, among other things,  supervise the reorganization of the Debtor and to investigate the actual causes of the reorganization and, when necessary, pursue causes of action for the benefit of creditors.

(b)     The Brazilian Proceeding qualifies as a "foreign proceeding" under section 101(23) of the Bankruptcy Code because it is a judicial proceeding pending in a Brazilian court under the bankruptcy laws of Brazil for the purpose of reorganization. *See Id.*

(c)     The Brazilian Proceeding further qualifies as a "foreign main proceeding" because the Brazilian Proceeding is a foreign proceeding pending in Brazil, which is the Debtors' center of main interests. *See Id.*

(d)     To the extent section 109(a) of the Bankruptcy Code applies in Chapter 15

cases, the Debtors qualify as a "debtor" under section 109(a) because the Debtors are the subject of a foreign proceeding and have assets in the United States, which include a retainer on deposit with the Sequor Law, P.A. law firm.

(e)     Lastly, this Verified Motion is accompanied by the Brazilian Court's Order granting the court-approved reorganization of the Debtors, the Brazilian Court's Order converting the reorganization to liquidation, and the Brazilian Court's Order appointing the Foreign Representative as foreign representative. *See* Ex. A.  Further, the Statements required by Rule 1515(c) and Fed. R. Bankr. P. 1007(a)(4) are being filed together herewith. *See* Ex. B.

## **RELIEF REQUESTED**

2.     By this Verified Motion, the Foreign Representative respectfully requests an Order pursuant to sections 105(a), 1507, 1517, 1520 and 1521 of the Bankruptcy Code, substantially in the form of the Proposed Order, attached hereto as **Exhibit "C"**, granting the following relief:

(a)     Recognizing the Brazilian Proceeding as a "foreign main proceeding" and the Foreign Representative as the foreign representative of the Debtors.

(b)     Granting the relief allowable as of right upon recognition of a foreign main proceeding under section 1520 of the Bankruptcy Code;

(c)     Granting the following additional relief under section 1521 of the Bankruptcy Code:

(1)     staying the commencement or continuation of any action or proceeding without the consent of the Foreign Representative concerning rights, obligations or liabilities of the Debtors, the Debtors' estate to the extent not stayed under section 1520(a) of the Bankruptcy Code;

(2)      staying execution against the Debtor to the extent not stayed under § 1520(a);

(3)      suspending the right to transfer or otherwise dispose of any assets of the Debtors to the extent this right has not been suspended under section 1520(a);

(4)      providing for the examination of witnesses, the taking of evidence, and the delivery of information concerning the assets, affairs, rights, obligations or liability of the Debtors, the Debtors' estate under § 1521(a)(4), the Federal Rules of Bankruptcy Procedure, including Fed. R. Bankr. P. 2004, and Local Rule 2004-1;

(5)      entrusting the administration or realization of all of the assets of the Debtors' within the territorial jurisdiction of the United States to the Foreign Representative;

(6)      entrusting the distribution of all or part of the assets of the Debtor located within the United States to the Foreign Representative;

(7)      otherwise granting comity to and giving full force and effect to the Orders of the Brazilian Court attached in Ex. A; and

(d)      granting the Foreign Representative such other and further relief as this Court may deem just and proper.

## **CONCLUSION**

WHEREFORE, the Foreign Representative respectfully requests that the Court enter an Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

## 28 U.S.C. § 1746 VERIFICATION

I verify under penalty of perjury under the laws of the United States of America that the foregoing Verified Motion is true and correct.

Executed in _____Brazil_____ on February _27_, 2019

_____

Alexandre Borges Leite

Dated: February 28, 2019                    Respectfully submitted,

**SEQUOR LAW, P.A.**
1001 Brickell Bay Dr., 9th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
          bdecamargo@sequorlaw.com

By:    /s/ Leyza F. Blanco
       Leyza F. Blanco
       Florida Bar No.: 104639
       Bruno de Camargo
       Florida Bar No.: 117588

# EXHIBIT "A"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SMAR EQUIPAMENTOS INDUSTRIAS LTDA.,          Chapter 15
SMAR COMERCIAL LTDA., and VALBLOCK
INDUSTRIA E COMERCIO LTDA.                    Case No.:

      Debtors in a Foreign Proceeding.
_____/

**DECLARATION OF THE FOREIGN REPRESENTATIVE IN SUPPORT OF**
**CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING**

      I, Alexandre Borges Leite, hereby declare as follows:

      1.      I am over the age of 18 and I am competent to make this Declaration.  All statements contained herein of the Debtors' operations and financial condition are true to the best of my knowledge, my review of the relevant documents and from conversations with relevant personnel. If called upon, I could testify as to all matters set forth in this declaration based upon my own personal knowledge, except for those portions specified as being otherwise. Though English is not my native language, I was assisted with the translation of this Declaration sufficient to verify the authenticity and veracity of the information herein.  If called upon to testify, I would need an interpreter to assist me.

      2.      This Declaration is submitted in support of the Chapter 15 Petition for Recognition of a Foreign Proceeding (the "Petition") and the Verified Petition for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code (the "Verified Motion") , seeking entry of an Order granting (i) recognition of the Brazilian Proceeding as a

"foreign main proceeding" pursuant to section 1517 of the Bankruptcy Code; (ii) related relief under sections 1520, 1521; and (iii) other applicable relief under the Bankruptcy Code.

3.      On or about July 26, 2013, Smar Equipamentos Industrias Ltda., Smar Comercial Ltda., and Valblock Indústria e Comércio Ltda. (the "Debtors") filed a petition with the Second Civil Court of Sertãozinho, São Paulo, Brazil (the "Brazilian Court"), Case No. 0010153-96.2013.8.26.0597 for an order authorizing the reorganization of the Debtors under the applicable Brazilian law (the "Brazilian Proceeding"). On or about August 13, 2013, the Brazilian Court approved the application for reorganization of the Debtors (the "Reorganization Order"). A true and correct copy of the Reorganization Order is attached hereto as **Exhibit "1"**.

4.      The Reorganization Order appointed Pro-Brasil Serviços em Recuperação de Empresas[1], represented by Mr. Ricardo Hasson Sayeg, as the bankruptcy trustee for the Proceedings.

5.      Following a general meeting of creditors, it was determined that reorganization would not be feasible and that the proceedings should be converted into liquidation of the Debtors. A true and correct copy of the Brazilian Court's October 24, 2017, Order converting the reorganization into a bankruptcy is attached hereto as **Exhibit "2"** (the "Bankruptcy Order").

6.      The Bankruptcy Order also approved the creation of a new corporation named "Nova Smar", which would be created utilizing the profitable assets and business operations of the Debtors, but which would remove managerial choke points identified as contributing to the financial difficulties of the Debtors. The Brazilian Court judge therefore authorized the

---

[1] The trustee entity has since joined a consortium, BDOPro Consortium, in order to better provide its services, and the Brazilian Court has since amended the trustee to reflect same. The principal agent, Mr. Ricardo Hasson Saveg, has continued to handle the day-to-day of the Proceedings. *See* Ex. 2.

continuation of the Debtors' business operations in order to facilitate the transition from the Debtors to Nova Smar.

7.      Following the identification of assets abroad, the bankruptcy trustee then tasked my firm to locate and recover any assets that belong to the Debtors abroad.  On December 19, 2018, the Brazilian Court approved the trustee's decision and issued an Order appointing me as Foreign Representative of the Debtors.  A true and correct copy of the December 19, 2018, Order is attached hereto as **Exhibit "3"** (the "Appointment Order").  In addition, the Appointment Order specifically authorized the filing of Chapter 15 Proceedings in the United States to investigate the Debtors and related companies.

8.      Accordingly, I am qualified under Brazilian law to serve as foreign representative for the Debtors' bankruptcy proceeding and have the explicit authority to act as the Debtors' foreign representative to seek Chapter 15 recognition of the Brazilian Proceeding.

9.      For the reasons set forth below, I am advised of the following: (i) that I am a duly appointed "foreign representative" of the Brazilian Proceeding; (ii) that the Brazilian Proceeding constitutes a "foreign main proceeding" within the meaning of section 101(23) and (24) of the Bankruptcy Code, respectively; (ii) that this case was properly commenced in accordance with the requirements to be recognized as a "foreign main proceeding" under the Bankruptcy Code.

## Background

10.      The Debtors are the original and main entities for a group of global companies commonly referred to as "Smar" (the "SMAR Group"), which began operating in 1976 in the city of Sertãozinho, São Paulo, Brazil.

11.      The SMAR Group is a collection of technology focused businesses specializing in systems, solutions, and equipment development for industrial automation.  Over the last four

decades, the SMAR Group produced automation systems for myriad industries, exporting its product to over 70 countries through its various subsidiaries and/or international affiliates, including the United States, United Kingdom, Asia, and Europe.

12.     There are at least five known United States entities believed to be related to the Debtors: Smar International Corporation, Smar Laboratories Corporation, Smar Research Corporation, Carnasie Trading, LLC, and Monolithic Prec. Technology (collectively, the "Related Entities").  The Debtors and the Related Entities currently hold over 20 patents with the United States Patent and Trademark Office ("USPTO"), and are believed to have contracted with the United States Military.

13.     In accordance with registration documents filed with the Commercial Registry of the state of São Paulo, each of the Debtors were originally owned and controlled by seven individuals; however, ownership has since consolidated.  At the time the Brazilian Court converted the reorganization to a liquidation, ownership of the Debtors had concentrated to three individuals: Edumundo Rocha Gorini ("Gorini"), Sponchiado ("Sponchiado"), and Antônio José Zamproni ("Zamproni").

14.     Gorini and Sponchiado each own fifty percent (50%) of the Smar Equipamentos Industriais and Smar Comercial.  Zamproni owns one hundred percent (100%) of Valblock Indústria e Comércio.

### Brazilian Bankruptcy Proceedings

15.     As set forth above, the Debtors filed the Reorganization Proceeding under the laws of Brazil in Sertãozinho, in the state of São Paulo in July, 2013, and the Brazilian Court authorized the reorganization in August, 2013.

16.     In 2013, when the reorganization request was filed, the Debtors asserted a collective debt of roughly R$32 Million Brazilian Reais[2].

17.     In a collective reorganization of the Debtors as a singular unit, the debt was to be paid off through the sale of real estate held by the Debtors and through discounts over the debt of the unsecured creditors.  As part of that process the shareholders and administrators of the Debtors appointed Ronaldo Aloise ("Aloise") to manage the companies as an "independent" executive. Aloise was the registered agent of Smar Comercial at the time.

18.     On June 16, 2016, there was a creditors meeting wherein the creditors resolved to, amongst other things, create a "management committee" (the "Management Committee") to oversee the managers of the Debtors.

19.     A month later, on July 11, 2016, the creditors ratified a Brazilian Court decision to dismiss the managers of the company and appoint the Management Committee to oversee the day-to-day operations of the Debtors.

20.     The Management Committee provided reports of their activities, which, together with valuation reports and fiscal accounting of the Debtors' books, were presented to the Brazilian Court by the bankruptcy trustee and the creditors committee along with two suggestions on how to proceed with the Brazilian Proceeding.  The first suggestion was to convert the reorganization proceedings into liquidation proceedings.  The second suggestion was to create a new independent corporation, Nova Smar ("Nova"), which would be comprised of the profitable sections of the Debtors.

---

[2] As of February 11, 2019, this amount is approximately USD$8.5 Million, exclusive of tax debts which are not subject to reorganization proceedings in Brazil.

21.     The Management Committee noted that there were raw materials and assets of the foreign subsidiaries of the Debtors that it was unable to locate, but which they believed were absconded by faulty management.

22.     The Brazilian Court agreed with both suggestions.  On October 24, 2017, the Bankruptcy Order converted the Brazilian Proceeding from a reorganization to a liquidation, and authorized the creation of Nova Smar.

23.     The Bankruptcy Order appointed the Management Committee to the executive board of Nova Smar, stayed all pending actions against the Debtors in Brazil, and enjoined the sale or use of any Debtors assets, but for those assets that would be transferred to Nova Smar.

24.     Since the conversion from a reorganization to a liquidation, the Brazilian trustee for the Debtors has revealed that, as of June 2018, the debt of the Debtors is in excess of R$3.1 Billion Brazilian Reais[3], and includes tax debt that could not have been included in the reorganization proceedings.

25.     As a result of this discovery, and together with ongoing investigation and criminal prosecution of key shareholders and executives of the Debtors (which shall be further discussed below), the Brazilian Court appointed me the foreign representative for the Debtors to investigate, amongst other things, the role the Related Entities may have had in the deterioration of the Debtors' financial health.

### Criminal Activities of Debtors' Shareholders, Controllers, and Managers

26.     In 2009 Brazilian Public Attorneys began an investigation into the Debtors for a number of alleged financial crimes.

---

[3] As of February 11, 2019, this amount is approximately USD$825 Million.

27.    As the result of these investigations, a number of Debtors' shareholders and executives were arrested in 2014 for crimes committed against the national financial system, and in particular related to illicit transfers of funds abroad.  The arrested are still awaiting final judgment for the charges against them.

28.    Brazilian prosecutors worked together with US authorities to investigate and trace improprieties between and within the entities that comprise the SMAR Group, and specifically between the Debtors and Related Entities.

29.    The investigation identified that the SMAR Group committed tax fraud that caused losses of approximately US$400 million to the Brazilian government. The SMAR Group has also been accused of maintaining the proceeds of fraud in bank accounts abroad, including in the United States.

30.    Brazilian prosecutors allege that the tax fraud and illicit transfers of funds started as early as 1984 and continued unchecked throughout the decades.  In fact, it appears that even as the SMAR Group was being investigated for improprieties, it continued to divert money abroad.

31.    Edmundo Gorini, a 50% shareholder of Smar Equipamentos Industriais and Smar Comercial, together with seven other individuals were arrested in March, 2014, by the Brazilian Federal Police on charges related to fraud in foreign trade, tax evasion, wire transfer fraud, money laundering, misrepresentation, misconduct, and corruption of public officials.  It is believed that those criminal activities were undertaken utilizing the Debtors and their assets.

**Debtors' Assets Abroad**

32.    As previously noted, the SMAR Group expanded and distributed its product to over 70 countries worldwide, establishing a foothold in many other countries along the way.

Preliminary investigations conclude that the SMAR Group may have assets in the US, Mexico, Switzerland, and Singapore.

33.     Under Brazilian law, all assets belonging to a bankruptcy debtor is subject to collection under the proceeding, including assets located outside of Brazil.

34.     At this time, it is believed that at least some of the Related Entities own patents, service profitable contracts, and may own property or hold other assets on behalf of the Debtors.

### Debtors' Grounds for Recognition

35.     The December 19, 2018, Appointment Order expressly names me the foreign representative of the Debtors, and grants the ability to initiate ancillary bankruptcy proceedings in the United States.

36.     As stated above, the investigations of the Brazilian authorities positively identified a tax fraud scheme that resulted in at least USD$400 Million in losses to the Brazilian government. In addition, there is evidence suggesting that the Related Entities may hold, or have held, assets belonging to the Debtors.  As foreign representative, I am charged with the obligation to investigate the business affairs and dealings of the Debtors' principals, Related Entities, and other relevant related companies to, without limitation, reconstruct their affairs in relation to the Debtors and the resulting Brazilian Proceeding.

37.     I intend to investigate the nature and extent of any activities undertaken in the United States that may be related to the Debtors and their assets, as well as any assets in the United States that may have been acquired using funds belonging to the Debtors.

38.     Thereafter, I am charged with the responsibility of filing proceedings and asserting proprietary claims that may be available in the United States against any third parties that are subject to suit and which may have damaged or owe money to the Debtors in the United States.

39.     Such proceedings and actions will permit creditors of the Debtors further recovery opportunities in order to realize from assets or claims of the Debtors and maximize recovery on account of creditor claims.

[THIS PORTION INTENTIONALLY LEFT BLANK]

**Compliance with Federal Rule of Bankruptcy Procedure 1007(a)(4)**

40.    I hereby file the following information in accordance with Federal Rule of Bankruptcy Procedure 1007(a)(4) :

a.    I, Alexandre Borges Leite, am the duly appointed in the Brazilian Proceeding as the foreign representative of the Debtors.

b.    My address is as follows:

Rua Aldo Focosi, 420
Bairro Presidente Médici – Unidade 52
Ribeirão Preto, São Paulo, Brazil
CEP 14091-310

For purposes of this Proceeding, I respectfully request that any correspondence be sent, in addition to the address provided above, to:

Attn: Leyza F. Blanco
Bruno de Camargo
Sequor Law, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131

c.    The Debtors are not a party to litigation in the United States.

d.    No provisional relief is being sought under 11 U.S.C. § 1519 against any particular entity or person at this time.  However, the Foreign Representative of the Debtors, reserves the right to seek provisional relief as needed.

**Section 1515(c) Statement**

41.    I am not aware of any foreign proceedings, as that term is defined under section 101(23) of the Bankruptcy Code, of the Debtors other than this Chapter 15 Petition at this time.

I, Alexandre Borges Leite, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I am the Foreign Representative of the Debtors' insolvency proceeding and that, in such capacity, I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to the Debtors.

Dated this 27th day of February, 2019

Alexandre Borges Leite
for and on behalf of *SMAR Group*
as Foreign Representative

# EXHIBIT "1"

Tradução n° I-48966
Livro n° 583
Folha 267

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

## JUDICIARY BRANCH

### 2nd Lower Civil Court of the Judicial District of Sertãozinho/SP

Case No. 1537/13

### ADVISEMENT

On August 8, 2013, I hereby submit these case records to the advisement of Hon. Mrs. **Mayra Callegari Gomes de Almeida**, Judge of the 2nd Lower Civil Court of the Judicial District of Sertãozinho. I, (sgd) Legal Clerk, typed this.

### EXAMINED.

**Firstly, I receive the petition of pg. 436/437 as amendment to the complaint. The customary annotations shall be made regarding the new amount in dispute.**

**I grant the processing of the judicial reorganization of the companies Smar Equipamentos Industriais Ltda, Smar Comercial Ltda and Valblock Indústria e Comércio,** identified in the case records, considering that the legal requirements are met (Law No. 11.101/2005).

#### The jurisdiction of this Court.

This Court has jurisdiction to grant the processing of the judicial reorganization of plaintiffs, as it is the court of the location of the debtors' principal place of business (pgs. 28, 38 and 47).

#### Compliance with the legal requirements.

Under the terms of article 47 of Law No. 11.101/2005, hereinafter referred to as "said law", the purpose of the judicial reorganization is to enable the overcoming of debtors' economic-financial crisis in order to allow the maintenance of the producing source, the workers' jobs and the creditors' interests, thus enabling the preservation of the companies, its social function and the encouragement to the economic activity.

Plaintiffs meet the requirements provided for in article 48 of said law, because: they have been regularly exercising their activities for more than two years, according to the articles of association attached to the case records and duly registered with the proper body; they are not bankrupt; they have not, in less than five years, been granted a judicial reorganization, and their managers or controlling shareholders are not people convicted for any of the crimes provided for in said law (see judicial certificates in pg. 96 et sec. and representations in pgs. 109 et sec.).

Additionally, the complaint is in agreement with article 51 of said law, because it includes the explanation of the factual causes of the property situation of the debtors and the reasons for the economic-financial crisis and is supported by the documents provided for in item II of said article: accounting statements relating to the last three fiscal years; the accounting statements drawn up especially to support the request, prepared in strict compliance with the applicable corporate law and formed by balance sheets; retained earnings statement; income statement since the last fiscal year; manager's cash flow report and its projection; the full roll of employees, including the respective duties, wages, indemnifications and other installments to which they are entitled, with the corresponding month of reference, and the discrimination of the amounts that are pending payment; certificate of good standing of the debtors with the Public Registry of Companies, the updated articles of incorporation and the minutes of appointment of the current managers; the list of private assets of the controlling shareholders and the managers of the debtors; the updated statements of the checking accounts of debtors and any of their financial investments in any modality, including in investment



**Tradução n° I-48966**
**Livro n° 583**
**Folha 268**

*Sandra Regina Mattos Rudzit*

*TRADUTORA PÚBLICA*

funds or stock exchanges, issued by the respective financial institutions; certificates of the registries of protest located in the judicial district of the domicile or head office of the debtors and in those where they have branches; the list, subscribed by the debtors, of all legal actions in which they act as parties, including the labor claims, with the estimate of the respective amounts requested.

Therefore, considering that the documentation required in article 51 of said law is correct, I grant the processing of the judicial reorganization.

The accounting documents and other supporting reports, in the form and support provided for in the law, shall remain available to the court, the bankruptcy trustee and, upon court authorization, of any interested party.

### The Bankruptcy Trustee.

Under the terms of article 21 of said law, I appoint as Bankruptcy Trustee **Pró-Brasil Serviços em Recuperação de Empresas EIRELI E.P.P.**, National Corporate Taxpayers Register – CNPJ No. 15.324.876/0001-60, represented by Ricardo Hasson Sayeg, with address at Rua Itaquera, 384, room 01, Pacaembu, Postal Code 01246-030, São Paulo, State of São Paulo.

Under the terms of article 22 of said law, the Bankruptcy Trustee shall be liable, under supervision of the judge and the Committee (if any), in addition to other duties thereby imposed: 1) to send correspondence to the creditors included in the list mentioned in item III of the *main provision* of article 51 of said law, communicating the date of the request of judicial reorganization, the nature, the amount and classification given to the claim, within the term of thirty days, in view of the extensive list of creditors. The expenses with the preparation and sending of the letters, all with return receipt requested, shall be borne by plaintiffs, which shall advance the amount of the expenses corresponding to the Bankruptcy Trustee, within the term of 48:00 hours, as from of the submission of the estimate expenses amount by the Bankruptcy Trustee. After the use of the funds, the Bankruptcy Trustee shall render accounts directly to plaintiffs, within the term of 10 days; 2) to rapidly render all information requested by the interested creditors; 3) to provide statements of the debtors' books, which shall be certified *ex officio*, in order to serve as grounds for the proofs and objections of claims; 4) to request from the creditors, the debtors or their managers any information; 5) to prepare the list of creditors mentioned in § 2 of art. 7 of said law; 6) to consolidate the final list of creditors under the terms of art. 18 of said law; 7) to request to the judge the that call notice is issued for the meeting of creditors in the cases provided for in the law or whenever it finds it necessary to be heard for decision-making purposes; 8) to engage, upon court authorization, professionals or specialized companies to, whenever necessary, assist it in the exercise of its duties; 9) to pronounce itself in the cases provided for in the law; 10) to supervise the activities of the debtors and compliance with the judicial reorganization plan; 11) to file for bankruptcy in case of non-compliance with the obligation undertaken in the reorganization plan; 12) to submit to the judge, for attachment to the case records, a monthly report of the activities of the debtors; 13) to submit the report on the execution of the reorganization plan mentioned in item III of the main provision of art. 63 of this Law.

Under the terms of article 24 of Law No. 11.101/1005, I fix the remuneration amount of the bankruptcy trustee at 5% of the amount due to the creditors – submitted to judicial reorganization, in view of the debtor's payment capacity and the work complexity degree to be developed.

The payment of the Bankruptcy Trustee's remuneration shall be made on a monthly basis, every 10th day of every month, in the amount of eighteen thousand *Reais* (R$18,000.00) per month, until it reaches 60% of the amount provided for in the previous paragraph, under the terms of § 2 of article 24 of said law, since 40% of the amount due to the bankruptcy trustee shall be reserved for payment after compliance with the provisions in 154 and 155 of said law.

The debtors shall jointly and severally and in the same proportion bear the expenses relating to the remuneration of the Bankruptcy Trustee and any people engaged to assist it (article 25).



*TRADUTORA PÚBLICA*

Under the terms of do article 33, **the Bankruptcy Trustee, as soon as appointed, shall be notified by phone in order to, within forty-eight hours, execute, in the seat of the court, the commitment instrument and to faithfully perform the position and undertake all the liabilities inherent thereto.**

### Interlocutory relief.

I grant the request of pgs. 444/453, so that Companhia Paulista de Força e Luz S.A. refrain from interrupting the supply of electric power to the properties of the companies under reorganization, in view of the debit existing until the date of the filing of the action, since it is subject to this judicial reorganization procedure.

As provided for in art. 49, *main provision,* of Law 11.101/05, the existing claims are subject to the reorganization until the filling thereof. Those arising and maturing at a later date cannot be included within the scope of its incidence.

Therefore, notify Companhia Paulista de Força e Luz S.A. to abide by this decision.

### The measures to be adopted.

1) I determine the waiver of presenting debt clearance certificates for the debtors to exercise their activities, except for contracting with the Government or to receive benefits or tax or credit incentives, with due regards for the provisions in art. 69 of said law.

2) I order the suspension of all actions or executions against debtors pursuant to article 6 of Law No. 11.101/2005, for the undelayable term of 180 days, and the respective case records shall remain in the court where they are being processes, except for the actions provided for in §§ 1, 2 and 7 of art. 6 of said law (§ 1 action requiring an illiquid amount; § 2 – labor claims, including the objections mentioned in art. 8 of said law, which shall be processed before specialized courts until the ascertainment of the respective claim, which shall be listed in the final list of creditors at the amount determined in the judgment; §7 - tax executions, except for the granting of payment in installments under the terms of the National Tax Code and the specific ordinary laws) and those relating to claims except pursuant to §§ 3 and 4 of art. 49 of said law. (§3 – regarding a creditor in a position of fiduciary owner of properties or movables, lessor, owner or promisor-seller of property whose respective agreements contain irrevocability or irreversibility clauses, including in real estate developments, or owner in a purchase agreement with reservation of title, its claim shall not be subject to the effects of the judicial reorganization and the property rights shall prevail over the thing and contract conditions, with due regard for the respective laws, however, during the term of suspension mentioned in § 4 of art. 6 of said law, the sale or removal of the debtor's establishment from the capital assets essential to its business activity shall be forbidden; §4 - the amount mentioned in item II of art. 86 of said law shall not be subject to the effects of the judicial reorganization (item II of article 86: of the amount delivered to the debtor, in Brazilian currency, resulting from advance in a foreign exchange contract for export, pursuant to art. 75, §§ 3 and 4, of Law No. 4.728, of July 14, 1965, as long as the total term of the transaction, including any extensions, does not exceed that provided for in the specific rules of the proper authority).

3) I determine that debtors submit monthly demonstrative accounts while the judicial reorganization persists, under penalty of removal of its managers (article 52, item IV).

4) Under the terms of article 6, §6, of Law No. 11.101/2005, regardless of periodical verification with the assignment court offices, the actions to be filed against the debtors shall be notified to this court by the debtors, immediately after service of process.

5) Notify the Public Prosecutor's Office and communicate, by letter, the Federal Tax Authority and that of all States and Municipalities in which the debtors have an establishment.

6) I order, under the terms of article 52, §1, of said law, the underline issuance of notice, for publication in the official body, containing: I – a summary of the debtor's request and the decision that grants the

Tradução n° I-48966
Livro n° 583
Folha 270

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

processing of the judicial reorganization; II – the nominal list of creditors detailing the updated amount and the classification of each claim; III – the warning regarding the terms for proof of claims, pursuant to art. 7, § 1, of said Law, and so that the creditors file an objection against the judicial reorganization plan submitted by the debtors under the terms of art. 55 of said Law.

7) Upon publication of the notice above, the creditors shall have the term of fifteen days to submit to the Bankruptcy Trustee their proofs or divergences regarding the listed claims (article 7, §1).

8) Under the terms of art. 7, §2, of said law, the Bankruptcy Trustee, based on the information and documents gathered pursuant to the *main provision* and §1 of article 7, shall arrange for the publication of the notice, containing the list of creditors, within the term of forty-five days, counted as from the end of the term provided for in §1 of article 7, and indicating the location, time and common term in which the people designated in art. 8 of said law shall have access to the documents that grounded the preparation of such list.

9) The reorganization plan shall be submitted by debtors in court within the undelayable term of sixty days, as from the publication of this decision, under penalty of conversion into bankruptcy, as well as they shall meet all requirements and duties described in details in Law No. 11.101/2005.

10) Notify the Commercial Registry to annotate the judicial reorganization of the plaintiffs in the corresponding registration (article 69, sole paragraph).

**The Plaintiffs shall, within 5 days, make available to the Service Manager and the Bankruptcy Trustee the full nominal list of creditors, detailing the updated amount and the classification of each claim, in a pen drive recording, in order to enable the sending of correspondence to the creditors and issuance of notice, considering the long list of creditors; if such measures are not complied with immediately, this shall especially harm the efficient and rapid compliance with the determinations of this court.**

Notify.

Sertãozinho, August 13, 2013.

(ass)

**Mayra Callegari Gomes de Almeida**

**Judge**

**Date**

**On August 13, 2013 I received these records in the Court Office.**

**I (sgd) Clerk, subscribed it.**

(handwritten text: "(illegible) on August 19, 2013 – (sgd) 189252")

Stamp of the 2nd Court Office.

Pages initialed.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, February 1, 2019*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

rsi/200551.doc

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP n° 1688 - CPF 082.060.018-08 - RG 8.222.831-1
Rua Matias Aires, 402 - 9° andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

# PODER JUDICIÁRIO
## 2ª Vara Cível da Comarca de Sertãozinho/SP



2º OFÍCIO
fls. 468

Proc. n° 1537/13

# C O N C L U S Ã O

Em 08 de agosto de 2013, faço estes autos conclusos a Exma. Sra.
Dra. **Mayra Callegari Gomes de Almeida**, MMa. Juíza de Direito da 2ª
Vara Cível da Comarca de Sertãozinho. Eu, _____ , Escrevente
Técnico Judiciário, digitei.

VISTOS.

Primeiramente, recebo a petição de fls.
436/437 como aditamento da petição inicial. Realizem-se
as anotações de praxe, quanto ao novo valor atribuído à
causa.

Defiro o processamento da recuperação
judicial das empresas Smar Equipamentos Industriais
Ltda, Smar Comercial Ltda e Valblock Indústria e
Comércio, qualificadas nos autos, tendo em vista que

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

1

## PODER JUDICIÁRIO
### 2ª Vara Cível da Comarca de Sertãozinho/SP

Proc. n° 1537/13

estão presentes os requisitos legais (Lei n. 11.101/2005).

### Da competência deste juízo.

Este juízo é competente para deferir o processamento da recuperação judicial das requerentes, pois é o juízo do local do principal estabelecimento das devedoras (fls. 28, 38 e 47).

### Do preenchimento dos requisitos legais.

Nos termos do artigo 47 da Lei n.11.101/2005, doravante chamada "referida lei", a recuperação judicial tem por objetivo viabilizar a superação da situação de crise econômico-financeira das devedoras, a fim de permitir a manutenção da fonte produtora, do emprego dos trabalhadores e dos interesses dos credores, promovendo, assim, a preservação das empresas, sua função social e o estímulo à atividade econômica.

As autoras preenchem os requisitos previstos no artigo 48 de referida lei, pois: exercem regularmente suas atividades há mais de dois anos, conforme contratos sociais juntados aos autos e

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

2

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP



Proc. n° 1537/13

devidamente registrados junto ao órgão competente; não são falidas; não obtiveram, há menos de cinco anos, concessão de recuperação judicial; não foram condenadas e não têm como administradores ou sócios controladores, pessoas condenadas por qualquer dos crimes previstos em referida lei (vide certidões judiciais de fls. 96 e seguintes e declarações de fls. 109 e seguintes).

Ademais, a petição inicial está em conformidade com o artigo 51 de referida lei, já que contém a exposição das causas concretas da situação patrimonial das devedoras e das razões da crise econômico-financeira e está instruída com os documentos previstos no inciso II de referido artigo: demonstrações contábeis relativas aos três últimos exercícios sociais; as demonstrações contábeis levantadas especialmente para instruir o pedido, confeccionadas com estrita observância da legislação societária aplicável e compostas de balanço patrimonial; demonstração de resultados acumulados; demonstração do resultado desde o último exercício social; relatório gerencial de fluxo de caixa e de sua projeção; a relação integral dos empregados, em que constem as respectivas funções, salários, indenizações

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

3

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP

Proc. n° 1537/13

e outras parcelas a que têm direito, com o correspondente mês de competência, e a discriminação dos valores pendentes de pagamento; certidão de regularidade das devedoras no Registro Público de Empresas, o ato constitutivo atualizado e as atas de nomeação dos atuais administradores; a relação dos bens particulares dos sócios controladores e dos administradores das devedoras; os extratos atualizados das contas bancárias das devedoras e de suas eventuais aplicações financeiras de qualquer modalidade, inclusive em fundos de investimento ou em bolsas de valores, emitidos pelas respectivas instituições financeiras; certidões dos cartórios de protestos situados na comarca do domicílio ou sede das devedoras e naquelas onde possuem filiais; a relação, subscrita pelas devedoras, de todas as ações judiciais em que figuram como parte, inclusive as de natureza trabalhista, com a estimativa dos respectivos valores demandados.

Portanto, estando em termos a documentação exigida no artigo 51 de referida lei, defiro o processamento da recuperação judicial.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

4

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP



Proc. n° 1537/13

Os documentos de escrituração contábil e demais relatórios auxiliares, na forma e no suporte previstos em lei, permanecerão à disposição do juízo, do administrador judicial e, mediante autorização judicial, de qualquer interessado.

**Do Administrador Judicial.**

Nos termos do artigo 21 de referida lei, nomeio Administrador Judicial **Pró-Brasil Serviços em Recuperação de Empresas EIRELI E.P.P.**, CNPJ n. 15.324.876/0001-60, representada por Ricardo Hasson Sayeg, com endereço na Rua Itaquera, 384, sala 01, Pacaembu, CEP 01246-030, São Paulo, SP.

Nos termos do artigo 22 de referida lei, competirá ao Administrador Judicial, sob a fiscalização do juiz e do Comitê (se houver), além de outros deveres que referida lhe impõe: 1) enviar correspondência aos credores constantes na relação de que trata o inciso III do *caput* do artigo 51 de referida lei, comunicando a data do pedido de recuperação judicial, a natureza, o valor e a classificação dada ao crédito, no prazo de trinta dias, tendo em vista a extensa lista de credores. As despesas com confecção e a remessa das

5

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP

Proc. nº 1537/13

cartas, todas com aviso de recebimento, deverão ser
suportadas pelas requerentes, que deverão adiantar o
valor das despesas correspondentes ao Administrador
Judicial, no prazo de 48:00 horas, a contar da
apresentação do valor da estimativa de despesa pelo
Administrador Judicial. Após o uso dos recursos, o
Administrador Judicial deverá prestar contas
diretamente às requerentes, no prazo de 10 dias; 2)
fornecer, com presteza, todas as informações pedidas
pelos credores interessados; 3) dar extratos dos livros
das devedoras, que merecerão fé de ofício, a fim de
servirem de fundamento nas habilitações e impugnações
de créditos; 4) exigir dos credores, das devedoras ou
seus administradores quaisquer informações; 5)elaborar
a relação de credores de que trata o § 2º do art. 7º de
referida lei; 6) consolidar o quadro-geral de credores
nos termos do art. 18 de referida lei; 7) requerer ao
juiz convocação da assembléia-geral de credores nos
casos previstos em lei ou quando entender necessária
sua ouvida para a tomada de decisões; 8) contratar,
mediante autorização judicial, profissionais ou
empresas especializadas para, quando necessário,
auxiliá-la no exercício de suas funções; 9) manifestar-

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

6

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP



Proc. n° 1537/13

se nos casos previstos em lei; 10) fiscalizar as atividades das devedoras e o cumprimento do plano de recuperação judicial; 11) requerer a falência no caso de descumprimento de obrigação assumida no plano de recuperação; 12) apresentar ao juiz, para juntada aos autos, relatório mensal das atividades das devedoras; 13) apresentar o relatório sobre a execução do plano de recuperação, de que trata o inciso III do caput do art. 63 desta Lei.

Nos termos do artigo 24 da Lei n. 11.101/1005, fixo o valor da remuneração do administrador judicial em 5% do valor devido aos credores submetidos à recuperação judicial, haja vista a capacidade de pagamento das devedoras e o grau de complexidade do trabalho a ser desenvolvido.

O pagamento da remuneração do Administrador Judicial deverá ser feito mensalmente, todo dia 10 de cada mês, no valor de R$18.000,00 (dezoito mil reais) por mês, até atingir 60% do valor previsto no parágrafo anterior, nos termos do § 2° do artigo 24 de referida lei, já que 40% do montante devido ao administrador judicial serão reservados para

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

7

**PODER JUDICIÁRIO**
**2ª Vara Cível da Comarca de Sertãozinho/SP**

Proc. nº 1537/13

pagamento após atendimento do previsto nos artigos 154 e 155 de referida lei.

Caberá às devedoras, solidariamente e na mesma proporção, arcar com as despesas relativas à remuneração do Administrador Judicial e das pessoas eventualmente contratadas para auxiliá-lo (artigo 25).

Nos termos do artigo 33, **o Administrador Judicial, logo que nomeado, será intimado por telefone para, em quarenta e oito horas, assinar, na sede do juízo, o termo de compromisso de bem e fielmente desempenhar o cargo e assumir todas as responsabilidades a ele inerentes.**

**Tutela antecipada.**

Defiro o pedido de fls. 444/453, a fim de que a Companhia Paulista de Força e Luz S.A. se abstenha de interromper o fornecimento de energia elétrica dos imóveis das empresas recuperandas, em razão de débito existente até a data da propositura desta demanda, uma vez que o mesmo está sujeito a este procedimento de recuperação judicial.

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

8

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP

2º OFÍCIO
fls.

Proc. n° 1537/13

Como decorre do art. 49, *caput*, da Lei 11.101/05, sujeitam-se à recuperação os créditos existentes até seu ajuizamento. Os que nasceram e venceram em data posterior não podem ser inseridos no âmbito de sua incidência.

Destarte, oficie-se à empresa Companhia Paulista de Força e Luz S.A. a fim de que cumpra a presente decisão.

**Das providências a serem adotadas.**

1) Determino a dispensa da apresentação de certidões negativas para que as devedoras exerçam suas atividades, exceto para contratação com o Poder Público ou para recebimento de benefícios ou incentivos fiscais ou creditícios, observando o disposto no art. 69 de referida lei.

2) Ordeno a suspensão de todas as ações ou execuções contra as devedoras, na forma do artigo 6° da Lei n. 11.101/2005, pelo prazo improrrogável de 180 dias, permanecendo os respectivos autos no juízo onde se processam, ressalvadas as ações previstas nos §§ 1°, 2° e 7° do art. 6° de referida lei (§1° a ação que

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

9

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP

Proc. n° 1537/13

demandar quantia ilíquida; § 2° - as ações de natureza
trabalhista, inclusive as impugnações a que se refere o
art. 8° de referida lei, as quais serão processadas
perante a justiça especializada até a apuração do
respectivo crédito, que será inscrito no quadro-geral
de credores pelo valor determinado em sentença; §7° -
as execuções de natureza fiscal, ressalvada a concessão
de parcelamento nos termos do Código Tributário
Nacional e da legislação ordinária específica) e as
relativas a créditos excetuados na forma dos §§ 3° e 4°
do art. 49 de referida lei (§3° - tratando-se de credor
titular da posição de proprietário fiduciário de bens
móveis ou imóveis, de arrendador mercantil, de
proprietário ou promitente vendedor de imóvel cujos
respectivos contratos contenham cláusula de
irrevogabilidade ou irretratabilidade, inclusive em
incorporações imobiliárias, ou de proprietário em
contrato de venda com reserva de domínio, seu crédito
não se submeterá aos efeitos da recuperação judicial e
prevalecerão os direitos de propriedade sobre a coisa e
as condições contratuais, observada a legislação
respectiva, não se permitindo, contudo, durante o prazo
de suspensão a que se refere o § 4° do art. 6° de

10

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP



Proc. nº 1537/13

referida lei, a venda ou a retirada do estabelecimento do devedor dos bens de capital essenciais a sua atividade empresarial; §4º – não se sujeitará aos efeitos da recuperação judicial a importância a que se refere o inciso II do art. 86 de referida lei (inciso II do artigo 86: da importância entregue ao devedor, em moeda corrente nacional, decorrente de adiantamento a contrato de câmbio para exportação, na forma do art. 75, §§ 3º e 4º, da Lei n. 4.728, de 14 de julho de 1965, desde que o prazo total da operação, inclusive eventuais prorrogações, não exceda o previsto nas normas específicas da autoridade competente).

3) Determino que as devedoras apresentem contas demonstrativas mensais enquanto perdurar a recuperação judicial, sob pena de destituição de seus administradores (artigo 52, inciso IV).

4) Nos termos do artigo 6º, §6º, da Lei n. 11.101/2005, independentemente da verificação periódica perante os cartórios de distribuição, as ações que venham a ser propostas contra as devedoras deverão ser comunicadas a este juízo pelas devedoras, imediatamente após a citação.

11

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

**PODER JUDICIÁRIO**
**2ª Vara Cível da Comarca de Sertãozinho/SP**

Proc. n° 1537/13

5) Intime-se o Ministério Público e comuniquem, por carta, as Fazendas Públicas Federal e de todos os Estados e Municípios em que as devedoras tiverem estabelecimento.

6) Ordeno, nos termos do artigo 52, §1°, de referida lei, a expedição de edital, para publicação no órgão oficial, que conterá: I - o resumo do pedido das devedoras e da decisão que defere o processamento da recuperação judicial; II - a relação nominal de credores, em que se discrimine o valor atualizado e a classificação de cada crédito; III - a advertência acerca dos prazos para habilitação dos créditos, na forma do art. 7°, § 1°, desta Lei, e para que os credores apresentem objeção ao plano de recuperação judicial apresentado pelas devedoras nos termos do art. 55 desta Lei.

7) Publicado o edital acima, os credores terão o prazo de quinze dias para apresentar ao Administrador Judicial suas habilitações ou suas divergências quanto aos créditos relacionados (artigo 7°, §1°).

8) Nos termos do 7°, §2°, de referida lei, o Administrador Judicial, com base nas informações e

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

12

**PODER JUDICIÁRIO**
2ª Vara Cível da Comarca de Sertãozinho/SP

2º OFÍCIO
fls.



Proc. n° 1537/13

documentos colhidos na forma do *caput* e do § 1° do artigo 7°, fará publicar edital contendo a relação de credores, no prazo de quarenta e cinco dias, contado do fim do prazo previsto no §1° do artigo 7°, devendo indicar o local, o horário e o prazo comum em que as pessoas indicadas no art. 8° de referida lei terão acesso aos documentos que fundamentaram a elaboração dessa relação.

9) O plano de recuperação deverá ser apresentado pelas devedoras em juízo no prazo improrrogável de sessenta dias, a contar da publicação desta decisão, sob pena de convolação em falência, bem como deverão observar todas as exigências e deveres pormenorizadamente discriminadas na Lei n. 11.101/2005.

10) Oficie-se à Junta Comercial para que seja anotada a recuperação judicial das requerentes no registro correspondente (artigo 69, parágrafo único).

**As requerentes deverão, em 5 dias, disponibilizar à Diretora de Serviço e ao Administrador Judicial a íntegra da relação nominal de credores, em que se discrimine o valor atualizado e a classificação de cada crédito, em gravação em *pen drive*, para o fim de viabilizar a remessa de correspondência aos credores**

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

## PODER JUDICIÁRIO
2ª Vara Cível da Comarca de Sertãozinho/SP

Proc. nº 1537/13

e a expedição de edital, haja vista a extensa lista de credores; caso tal medida não seja atendida com presteza, inviabilizará, sobremaneira, o cumprimento eficiente e ágil das determinações deste juízo.

Int.

Sertãozinho, 13 de agosto de 2013.

Mayra Callegari Gomes de Almeida
Juíza de Direito



**DATA**

Em _____ de 13 AGO 2013 _____ de _____

recebi estes autos em Cartório.

Eu, _____ Escrevente Subscr.

14

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

01 FEV 2019   1   - 4896 6

# EXHIBIT "2"



Tradução nº I-48965
Livro nº 583
Folha 260

*TRADUTORA PÚBLICA*

*I, Sandra Regina Mattos Rudzit, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

## STATE OF SÃO PAULO COURT OF APPEALS

## JUDICIAL DISTRICT OF SERTÃOZINHO

COURTHOUSE OF SERTÃOZINHO – 2ND LOWER CIVIL COURT

### DECISION - BANKRUPTCY

Reorganization Companies: **Smar Comercial Ltda., Smar Equipamentos Industriais Ltda. and Valblock Indústria e Comércio Ltda.**

Class: Judicial Reorganization Plan

Subject: Judicial Reorganization and Bankruptcy

Case: 0010153-96.2013.8.26.0597

Conversion into bankruptcy of the judicial reorganization of the Smar Group and creation of the Isolated Production Unit - Nova Smar S/A, a wholly-owned subsidiary

**SMAR EQUIPAMENTOS INDUSTRIAIS LTDA., SMAR COMERCIAL LTDA.** and **VALBLOCK INDÚSTRIA E COMÉRCIO,** economic group, filed for a request for judicial reorganization on July 26, 2013 (pgs. 2-15).

The processing of the reorganization was granted on August 13, 2013 and upon the same act Pro-Brasil Serviços em Recuperação de Empresas EIRELI EPP, registered with the National Corporate Taxpayers' Register (CNPJ/MF) under No. 15.324.876/0001-60, represented by Mr. Ricardo Hasson (468-474), was appointed Bankruptcy Trustee.

The Reorganization Companies, then, submitted the Judicial Reorganization Plan (678-706) and an appraisal report of the assets (pages 711-847). The Trustee stated that there were inconsistencies in the plan submitted (pgs. 1020-5). Thus, the Reorganization Companies agreed to the Judicial Reorganization Plan (pgs. 1077-1104).

The shareholders of the Reorganization Companies engaged Ronaldo Aloise, a professional not member of the company, to manage the companies (pgs. 1121-4).

The Bankruptcy Trustee concluded the administrative verification of the proof of claims and the divergences and submitted a draft of the notice set forth in art. 7, paragraph 2, Law 11.101, of February 9, 2005 - LRF (pgs. 1136-403).

The State of São Paulo Court of Appeals, by Appellate Decision, excluded the Reorganization Companies from the special regime imposed by the State Treasury (pg. 1410).

The General Meeting of Creditors was called for on September 12, 2014 and, on the second call, for September 19, 2014.

The General Meeting of Creditors was not opened on the first date, however, the Bankruptcy Trustee took the opportunity to mediate with those who were present and, with this, various proofs of claims and challenges of class I creditors were resolved (pgs. 1794-864); on a second call, the General Meeting of Creditors amended the Judicial Reorganization Plan and approved it by a majority of votes in all classes, and the Bankruptcy Trustee resolved several credit challenges (pgs. 2158-285). The Public Prosecutor opined for ratification of the plan (pgs. 2342-3). The Judicial Reorganization Plan was approved and, consequently, the judicial reorganization plan was granted on November 28, 2014 (pgs. 2422-4).

In the course of the case, there were several conflicts of jurisdiction, almost all, if not all, resolved



*TRADUTORA PÚBLICA*

affirming the jurisdiction of this 2nd Civil Court of Sertãozinho to the detriment of others. In spite of this, there were still some liens of goods and monies of the Reorganization Companies by order of several judgments, including two attachments in the records by order of the Judge of the 2nd Lower Labor Court of Sertãozinho (pgs. 9626-9 and 9634-6).

The Bankruptcy Trustee reported that there has been a material confusion between the Reorganization Companies and Smar Research (pgs. 2808-10 and 3072).

A judicial auction was designated, on July 25, 2015, for the sale of the property with registration 7166 under the Real Estate Registry Office of Sertãozinho, for the amount of R$12,500.00, in compliance with the Judicial Reorganization Plan (pg. 3449-51). This auction, however, was negative due to the lack of a bidder (pg. 4023). Subsequently, a further attempt was made to sell the property mentioned by public offering with closed bids offered for the minimum amount of R$12,500.00 (pgs. 4234-5 and 4550), but the attempt was unsuccessful due to the lack of bidder (pgs. 4805).

At the request of the Bankruptcy Trustee, a General Meeting of Creditors was called for June 9, 2016 and, on second call, for June 10, 2016, for evaluation and resolution on the execution of the Judicial Reorganization Plan (pg. 4628).

The General Meeting of Creditors, on June 16, 2016, *(i)* resolved on the creation of a Creditors' Committee, a Management Committee and an Ombudsman, and *(ii)* that there was no cash available for payment of labor creditors subject to the Judicial Reorganization Plan, and *(iii)* that there was an Urban Real Estate Tax (IPTU) debt due on the property (pg. 4865); on June 27, 2016, continuing the work, *(iv)* it elected the members of the Management Committee, the Creditors' Committee and the Ombudsman (pg. 5124); the Creditors' Committee and the Ombudsman's Office were created by a judicial decision (pgs. 6730-1); On July 11, 2016, the General Meeting of Creditors *(v)* unanimously ratified the decision handed down in an ancillary case, Digital Proceeding 0004648-22.2016.8.26.0597, which dismissed the statutory managers and appointed a Management Committee with a term of office until January 30, 2017 (pg. 5438); on August 12, 2016, *(vi)* amended the clause of the Judicial Reorganization Plan and reduced the minimum amount for the sale of the real property and *(vii)* extended the term of office of the members of the Management Committee (pages 5724-34), which was approved by judicial decision (pgs. 5984-5); on September 2, 2016 and September 16, 2016, decided nothing (pg. 6077 and 6244); October 3, 2016 *(viii)* approved an alternative proposal for the payment of class I creditors (pg. 6244), a decision that was ratified (pg. 6593); November 11, 2016, the proposal of the Bankruptcy Trustee was accepted and *(ix)* determined that the Management Committee should submit reports, information and proposals for the sale of the property as an isolated production unit - UPI or its payment in kind to the labor creditors subject to the Judicial Reorganization Plan and, on the same date, *(x)* created a legal board to defend the interests of creditors and advise the respective committee (pg. 6626), a resolution that was approved (pg. 6730-1); on December 2, 2016, the Management Committee presented information and reported on its activities, the General Meeting of Creditors *(xi)* was aware that the salaries of employees were overdue and that the alternative payment proposal for class I creditors had not been complied with and *(xii)* decided to suspend the payment of shareholders for services rendered (pg. 6782), which was approved by a court decision (pg. 6913); on January 30, 2017, in compliance with the request of the Bankruptcy Trustee, several documents were presented on the costs of closing the activity, data on patents and foreign companies, contracts in progress and the effective value of assets, etc., with the Meeting deciding to submit a final report on February 17, 2017, at the Bankruptcy Trustee's head office, with all the elements, documents and information about the economic viability of the Reorganization Companies (pg. 7622).

The State of São Paulo Court of Appeals, by Appellate Decision, amending a previous decision, ordered that the Reorganization Companies be included in the special tax regime (pages 5399 and 9466-73). The Reorganization Companies were exempted by the Appellate Court from submitting a debt clearance certificate to participate in a bidding process (pg. 6944).

Petróleo Brasileiro S.A. - Petrobras reported that it registered the Reorganizing Companies to make



business with it (pg. 8551).

The Bankruptcy Trustee, in a due diligence conducted on February 20, 2017, obtained a valuation report, a report and fiscal accounting diagnosis, balance sheets and adjustment notes and, at the same time, became aware of the requirements of creditors and employees and then petitioned for the appointment of a democratic management hearing (pg. 8285).

Judicial decision accepted the request of the Bankruptcy Trustee and designated the date April 12, 2014 to hold a democratic management hearing (pg. 8607). At the hearing, among others, *(i)* Libânio Carlos de Souza, Chairman of the Management Committee, spoke and clarified regarding management and presented a bankruptcy proposal with business continuity through an isolated production unit - UPI, which should be called Nova Smar, with the award of this new company to all class I creditors; *(ii)* Samuel Márcio Marquiti, President of the Union of Metallurgical Workers of Sertãozinho and Region, and Jorge Augusto Roque Souza, lawyer of the union, who manifested and agreed to the proposal of the Management Committee; *(iii)* José Leandro Ciofi, Accounting Expert, and Kelly Cristina Vieira, Human and Organizational Development Consultants, who presented their analysis on the activity of the companies and on the proposal of the Management Committee; *(iv)* Ricardo Aparecido Leite, a member of the Creditor Committee, and Aguinaldo Biffi and Eduardo Martinucci, legal advisors of the committee, who presented their comments (pgs. 8662-73).

The Creditor Committee presented written statements on the business plan and the by-laws submitted by the Management Committee (pgs. 9093-280 and 9415-37).

The Bankruptcy Trustee announced that he had received a complaint from Libânio Carlos de Souza, Chairman of the Management Committee, that special glasses used in the manufacture of the capacitive sensor pot owned by the Reorganization Companies were diverted (pg. 9285). The Management Committee, on July 14, 2017 complained of the diversion of assets of the foreign companies of the Smar Group (pgs. 9525-624).

The Bankruptcy Trustee declared favorably to the proposal for the creation of an isolated production unit (UPI), with the transformation of the judicial reorganization into bankruptcy, and attached to the case records two diligence instruments in which the Management Committee, the Creditors' Committee and its board of legal advisors agreed on several important points (pgs. 9313-69 and 9408-12).

The Management Committee informed of the outstanding salary balance of Guilherme José Moretti (pgs. 9371-9).

The Public Prosecutor became aware of all that was subject to the proceeding (pg. 9.384).

## THIS IS THE REPORT.

## GROUNDS AND DECISION.

The impossibility of the continuation of the activities of the Reorganization Companies and the failure of the judicial reorganization was very clear in the hearing of the democratic management. None of those present, and there were many, disagreed with the diagnosis presented by the Management Committee. The Reorganization Companies do not have the economic and financial capacity to settle the first priority debts and the commitments assumed with the Judicial Reorganization Plan. In truth, this plan was unfeasible, because it conditioned the payment of class I creditors to the sale of a real property, a future and uncertain event. The Reorganization Companies, since the failure of the attempted sale, were not able to present a viable alternative to continue with the judicial reorganization.

The economic and financial impossibility of the Reorganization Companies adds to the managerial unfeasibility, since the shareholders did not seek an effective solution to the crisis in which their companies have been for a long time, at least since the outbreak of the investigations that culminated in their prisons and the prison of former shareholders. The fact that the general creditors, who are mostly from class I, have no chances of receiving anything did not affect them, as they even abused the power of command to prevent the work of the General Meeting of Creditors from proceeding successfully. This

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1688 - CPF 082.060.018-08 - RG 8.222.837
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

Tradução nº I-48965
Livro nº 583
Folha 263



*TRADUTORA PÚBLICA*

attitude led to the judicial decision that removed them and created the Management Committee, Digital Proceeding 0004648-22.2016.8.26.0597. In addition, in the course of this proceeding, it was found that there was a need to "repair" the accounts of the Reorganization Companies, that there is a confusion of assets between the Reorganization Companies and Smar Research and that assets were diverted.

Despite the unenforceability of the Judicial Reorganization Plan, it is notable that the general creditors, until the democratic management hearing, did not demand the bankruptcy of the Reorganization Companies. The refusal to accept the bankruptcy is known to stem from the trust of these creditors in the Smar Group's venture, not least because the Reorganization Companies are undoubtedly worth much more than being closed. Therefore, the proposal to create a UPI - Isolated Production Unit in continuity of business in addition to meeting the will of the creditors is the most appropriate option both to preserve and optimize the production use of property, assets and production resources, including intangible assets, of the Bankrupt Companies as for the realization of the assets (LRF, articles 75, head provision, 144 and 145).

In fact, the Smar Group is a national highlight in the manufacture of apparatus and equipment for measuring, testing and controlling and the secondary activity of installing industrial machinery and equipment (pg. 8862). Therefore, the Management Committee prepared the "Nova Smar Business Plan" that restructures the group as an Isolated Production Unit - UPI, a wholly owned subsidiary, called "Nova Smar S/A", with the elimination of the faulty management points of the Reorganization Companies and the implementation of a new strategy based on financial, commercial and operational rigor to guide the proceeding and subproceedings of the new company (pgs. 8879-930). This plan was based on the "Conclusive Business Feasibility Report" presented by JL Business, an external and autonomous company, which suggested, based on sectorial benchmarking a new composition of revenues, costs and free cash flow in order to generate positive results (pgs. 8860-77). The aforementioned documents, which were exposed and widely discussed at the democratic management hearing, show that Nova Smar S/A, free from the absolutely anomalous liabilities and burden of the Reorganization Companies, with a well-thought-out organizational design (pgs. 8991-9008), has great chances to gain relevant position in the market and become valuable.

The members of the Management Committee, evidently, must assume the executive board of Nova Smar S/A, as they have shown that they are trustworthy, know the business and are committed to carrying out the venture. The difficulties they encountered stem from the insolvency of the Reorganization Companies. Moreover, as they helped to design Nova Smar S/A, no one is better than them to form the new company. Therefore, the objections of the Creditor Committee are surmountable, even though this is not the time for changes that may surprise the customers of the Reorganization Companies and the market.

The studies presented by the Creditor Committee are very interesting. However, the "dual management model" is not appropriate for this phase where management is under judicial review and, possibly, the General Meeting of Creditors. This is because it is necessary, for now, to have a small decision-making center to make the control of liability viable. When Nova Smar S/A is sold, the partners shall be free to change the bylaws.

The execution of assets and the form of sale of Nova Smar S/A and other related matters shall be decided opportunely, as the issues arise.

However, it is recorded that it is no longer possible to adjudicate the property under registration 7166 with the Real Estate Registry of Sertãozinho to the creditors of the judicial reorganization because this would be contrary to the rules of bankruptcy.

In view of the foregoing, and moreover, <u>on this date, at 3:00 p.m.,</u> based on art. 73, IV, of Law 11.101, of February 9, 2005, **I CONVERT** judicial reorganization into bankruptcy of the group formed by the companies **SMAR EQUIPAMENTOS INDUSTRIAIS LTDA.** CNPJ 46.761.730/0001-06 – State Registry 664.010.689.118 – Company Registry Enrollment NIRE 664.010.689.118, located at Rua Augusto Zanini, 895, Jardim Sumaré, in the city of Sertãozinho (State of São Paulo), postal code

**Tradução nº I-48965**
**Livro nº 583**
**Folha 264**

Sandra Regina Mattos Rudzit

*TRADUTORA PÚBLICA*

14.170-550, with the shareholders Mauro Sponchiado, Brazilian citizen, married, manufacturer, born on February 18, 1944, enrolled with Individuals Taxpayers' Register (CPF) 542.083.518-53 – bearer of Identity Card (RG) No. 5.660.490-7 SSP/SP, and Edmundo Rocha Gorini, Brazilian citizen, single, electrical engineer, born on January 2, 1951, enrolled with the Individuals Taxpayers' Register (CPF) 140.244.036-72 - Identity Card (RG) 8.211.889-9 SSP/SP, **SMAR COMERCIAL LTDA.,** registered with the Corporate Taxpayers' Register (CNPJ/MF) 74.379.686/0001-00 – IR 664.048.686.110 - Company Registry Enrollment No. NIRE 35.212.084.967, located at Rua Doutor Antônio Furlan Júnior, 784, Jardim Golive District, Sertãozinho (SP), postal code 14170-480, having as shareholders, Mauro Sponchiado, Brazilian citizen, married, manufacturer, born on February 18, 1944, enrolled with the Individuals Taxpayers' Register (CPF) under No. 542.083.518-53 - Identity Card (RG) No. 5.660.490-7 SSP/SP, and Edmundo Rocha Gorini, Brazilian citizen, single, electrical engineer, born on January 2, 1951, enrolled with the Individuals Taxpayers' Register (CPF) under No. 140.244.036-72 – bearer of Identity Card (RG) 8.211.889-9 SSP/SP, and **VALBLOCK INDÚSTRIA E COMÉRCIO LTDA.** registered with the Corporate Taxpayers' Register (CNPJ/MF) under No. 00.169.338/0001-71 - Company Registry Enrollment No. NIRE 35.212.468.668, located at Avenida Egisto Sicchieri, 146, Jardim Athenas, Sertãozinho (SP), postal code 14.161-000, having as shareholders, Mauro Sponchiado, Brazilian citizen, married, manufacturer, born on February 18, 1944, enrolled with the Individuals Taxpayers' Register (CPF) 542.083.518-53 - bearer of Identity Card (RG) 5.660.490-7 SSP/SP, Edmundo Rocha Gorini, Brazilian citizen, single, electrical engineer, born on January 2, 1951, enrolled with Individuals Taxpayers' Register (CPF) 140.244.036-72 - bearer of Identity Card (RG) 8.211 889-9 SSP/SP and Equipamentos Industriais Ltda., registered with the Corporate Taxpayers' Register (CNPJ/MF) under No. 46.761.730/0001-06 - IE 664.010.689.118 - No. NIRE 35.201.047.101, and I **fix** the legal term as the 90th day of the request for judicial reorganization (Law 11.101/2005, art. 99, II).

**I maintain** the Bankruptcy Trustee, Pro-Brasil Serviços em Recuperação de Empresas EIRELI EPP, registered with the Corporate Taxpayers' Register (CNPJ/MF) 15.324.876/0001-60, represented by Ricardo Hasson Sayeg, located at Rua Itaquera, 384, room 01, Pacaembu, postal code 01246-030, São Paulo (SP), already committed in the beginning of the proceedings.

**I grant** the proposal presented by the Management Committee at the democratic management hearing, approved by those present, and pursuant to Arts. 144 and 145 of Law 11.101 of February 9, 2005, I **grant** the Isolated Production Unit - UPI called **Nova Smar S/A,** a privately-held company, wholly-owned subsidiary, with a capital stock of R$28,172,742.00, according to the Financial Economic Valuation prepared in accordance with the Discounted Cash Flow methodology applied to the Shareholder - FCA, *Valuation* (pgs. 8972-87), composed of all tangible and intangible assets in accordance with the Assets Inventory (pgs. 8939-68), with the **exception** of real estate registration number 7166 of the Real Estate Registry of Sertãozinho (SP) **AND** the judicial deposit credit in the historical amount of R$10,969,888.92, **WITH** contribution of assets (tangible and intangible assets) of the companies, adopting as by-laws the project presented by the Management Committee at the aforementioned hearing (pgs.8932-7); such UPI shall be managed in a business continuity regime, without interruption of the activities of the Bankruptcy Companies, according to the Business Plan presented at the hearing (pgs. 8879-930), and in accordance with the Proposal for Organizational Structuring also presented at the hearing (pgs. 8.991-9008); I **appoint as its officers** for three years, the current members of the Management Committee - *(i)* Libânio Carlos de Souza, electronic engineer, enrolled with the Individuals Taxpayers' Register (CPF) No. 087.435.918-09 - bearer of Identity Card (RG) 37.334.268-8 SSP / SP; *(ii)* Rogério Lima de Souza, machine operator, enrolled with the Individuals Taxpayers' Register (CPF) 315.832.018-58 - bearer of Identity Card (RG) 45.260.802-8 SSP/SP; and *(iii)* Ricardo Max Kowalski Argolo, electrical engineer, Individuals Taxpayers' Register (CPF) No. 390.786.635-53 - bearer of Identity Card (RG) No. 3.099.876-01 SSP/BA, which *(a)* shall submit the declaration provided in art. 37, II of Law 8.934, of November 18, 1994 *and (b)* present the declaration provided for in art. 37, II, of Law 8.934, of November 18, 1994, and *(b)* be firmly committed and faithfully hold the position of officer of Nova Smar S/A, under the supervision of this Court and the Bankruptcy Trustee; and I **appoint** the current members of the Creditors Committee to act in the Fiscal Council - *(i)* Joel Gonçalves de Oliveira

Tradução nº I-48965
Livro nº 583
Folha 265



*TRADUTORA PÚBLICA*

Sobrinho, Brazilian citizen, married, manufacturer, enrolled with the Individuals Taxpayers' Register (CPF) 730.146.488-68 - bearer of Identity Card (RG) 7.424.238; *(ii)* Marcos José Sicchieri, Brazilian citizen, married, in charge of boilermaking and mechanics, enrolled with the Individual Taxpayers Register (CPF) 074.792.698-03 - bearer of Identity Card (RG) 14.530.278-7; and *(iii)* Ricardo José Aparecido Leite, Brazilian citizen, divorced, electronic engineer, enrolled with the Individual Taxpayers' Register (CPF) 450.118.936-34 - bearer of Identity Card (RG) No. 12.159.033-1, who must be committed to well and faithfully hold the position of members of the Fiscal Council of Nova Smar S/A.

Nova Smar S/A, under business continuity, becomes the holder of the agreements entered into by the Bankruptcy Companies with suppliers, service providers, financial institutions and customers.

The court clerk's office shall open the case records separately in order to institute a motion with a proper number for monitoring the other acts necessary for the formation of the Isolated Production Unit - UPI referred to as Nova Smar S/A, as well as for the supervision of the management of the new company. **The court clerk's office** shall certify in these records compliance with this item and publish it for the interested parties' knowledge.

Notify the Commercial Registry to **request** that this decision of incorporation of Nova Smar S/A and its bylaws, approved hereby, be filed and assign to the company an Identification Number of the Company Registry Enrollment - NIRE, under the terms of the sole paragraph of art. 2 of Law 8.934, of November 18, 1994. The appointed officers shall care that this filing be done as soon as possible, as well as rectify the situation of the new company with the Brazilian Federal Revenue Service and other bodies, requesting what is necessary to this Court.

The collection shall be borne by the real estate registry office 7166 of the Real Estate Registry of Sertãozinho (SP), the judicial deposit credit in the historic amount of R$10,969,888.92, Nova Smar S/A shares, as well as documents and books of the Bankruptcy Companies, pursuant to art. 108 et seq. of Law 11.101, of February 9, 2005.

I **order** the suspension of all lawsuits or executions against the bankrupts *(i)* Smar Equipamentos Industriais Ltda. *(ii)* Smar Comercial Ltda. and *(iii)* Valblock Indústria e Comércio Ltda., pursuant to art. 99, V, of Law 11.101, of February 9, 2005, except for the events provided for in paragraphs 1 and 2 of art. 6 of the same law, and I **suspend** the course of the statute of limitations.

The decree of bankruptcy makes this 2nd Civil Court of Sertãozinho indivisible and with jurisdiction to hear all actions on assets, interests and business of the Bankruptcy Companies, except for labor, tax and cases non-regulated by Law 11.101, of February 9, 2005, in which the Bankruptcy Companies appear as plaintiffs or co-plaintiffs.

All lawsuits shall continue to be processed with the Bankruptcy Trustee, who shall be invited to represent the Bankruptcy Estate, under penalty of nullity of the proceeding.

I **Forbid** the practice of any act of disposition or encumbrance of property of the bankrupt *(i)* Smar Equipamentos Industriais Ltda. *(ii)* Smar Comercial Ltda. and *(iii)* Valblock Indústria e Comércio Ltda., without judicial authorization and authorization from the Creditors Committee, except for the assets whose sale is part of the activities of the Isolated Production Unit - UPI - **Nova Smar S/A.**

**Notify the** Commercial Registry to proceed with the registration of bankruptcy of *(i)* Smar Equipamentos Industriais Ltda. *(ii)* Smar Comercial Ltda. and *(iii)* Valblock Indústria e Comércio Ltda., in order to include the word "Bankrupt", the date of the decree of bankruptcy and the disqualification referred to in Art. 102 of Law 11.101, of February 9, 2005.

**Notify** the Public Prosecutors' Office and **communicate** by letter to the Federal Public Treasuries and those of all the States and Municipalities in which the Bankruptcy Companies have establishment, as well as the corresponding Labor Courts, so that they become aware of the bankruptcy.

**Publish** the notice with this whole decision, as soon as the list of creditors is submitted, according to art. 99, sole paragraph, of Law 11.101, of February 9, 2005. I **fix** the period of 15 days from the publication of



Tradução n° I-48965
Livro n° 583
Folha 266

*TRADUTORA PÚBLICA*

the notice so that the creditors present to the Bankruptcy Trustee their qualifications or their divergences regarding the related credits, according to art. 7, paragraph 1, of the aforementioned law, **except** those already qualified.

**Notify. Comply.**

Sertãozinho (SP), October 24, 2017

### Marcelo Asdrúbal Augusto Gama

#### Judge

Digital signature, pursuant to Law 11.419/2006, as printed on the right margin

0010153-96.2013.8.26.0597

This document is a copy of the original, digitally signed by MARCELO ASDRUBAL AUGUSTO GAMA, released in the records on October 24, 2017 at 2:38 p.m.

To verify the original, go to https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, inform proceeding 0010153-96.2013.8.26.0597 and code GL0000001RIUF.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, February 1, 2019*

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública

jms/200553.doc

SANDRA REGINA MATTOS RUDZIT - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP n° 1688 - CPF 082.060.018-08 - RG 8.222.837-1
Rua Matias Aires, 402 - 9° andar - 01309-020 - São Paulo - SP - Brasil - Fone/Fax: 55-11-3155-7383 - e-mail: just@just.trd.br - www.just.trd.br

fls. 1



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

---

| | **DECISÃO – FALÊNCIA** |
|---|---|

| Recuperandas | : | **Smar Comercial Ltda., Smar Equipamentos Industriais Ltda. e Valblock Indústria e Comércio Ltda.** |
|---|---|---|
| Classe | : | Recuperação Judicial |
| Assunto | : | Recuperação judicial e Falência |
| Processo | : | 0010153-96.2013.8.26.0597 |

> Convolação em falência da recuperação judicial do Grupo Smar e constituição da Unidade Produtiva Isolada – Nova Smar S/A, subsidiária integral

**SMAR EQUIPAMENTOS INDUSTRIAIS LTDA., SMAR COMERCIAL LTDA.** e **VALBLOCK INDÚSTRIA E COMÉRCIO**, grupo econômico, distribuiu o pedido de recuperação judicial em 26/07/2013 (f. 2-15).

O processamento da recuperação foi deferido em 13/08/2013 e no mesmo ato foi nomeada Administradora Judicial a Pró-Brasil Serviços em Recuperação de Empresas EIRELI EPP, CNPJ 15.324.876/0001-60, representada pelo Doutor Ricardo Hasson (f. 468-474).

As Recuperandas, então, apresentaram o Plano de Recuperação Judicial (f. 678-706) e laudo de avaliação dos ativos (f. 711-847). A Administradora Judicial afirmou que havia inconsistências no plano apresentado (f. 1.020-5). Com isso, as Recuperandas ajustaram o Plano de Recuperação Judicial (f. 1.077-1.104).

Os sócios das Recuperandas contrataram Ronaldo Aloise, profissional não integrante da sociedade, para administrar as empresas (f. 1.121-4).

A Administradora Judicial concluiu a verificação administrativa das habilitações e divergências de crédito e apresentou minuta do edital previsto do art. 7º, § 2º, Lei 11.101, de 9 de fevereiro de 2005 – LRF (f. 1.136-403).

O Egrégio Tribunal de Justiça do Estado de São Paulo, por v. Acórdão, excluiu as Recuperandas do regime especial imposto pela Fazenda Estadual (f. 1.410).

A Assembleia Geral de Credores foi convocada para 12/09/2014 e, em

0010153-96.2013.8.26.0597                                                                    pág. 1/11

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

segunda convocação, para 19/09/2014.

A Assembleia Geral de Credores não foi instalada na primeira data, contudo, a Administradora Judicial aproveitou para realizar mediação com aqueles que estavam presentes e, com isso, diversas habilitações e impugnações de crédito de credores da classe I foram resolvidas (f. 1794-864); em segunda convocação, a Assembleia Geral de Credores modificou o Plano de Recuperação Judicial e o aprovou por maioria de votos em todas as classes, e a Administradora Judicial solucionou várias impugnações de crédito (f. 2158-285). O Doutor Promotor de Justiça opinou pela homologação do plano (f. 2342-3). O Plano de Recuperação Judicial foi homologado e, em consequência, a recuperação judicial foi concedida em 28/11/2014 (f. 2422-4).

No curso do processo, ocorreram vários conflitos de competência, quase todos, senão todos, resolvidos afirmando a competência deste Juízo da 2ª Vara Cível de Sertãozinho em detrimento dos outros. A despeito disso, ocorreram, ainda, algumas constrições de bem e numerários das Recuperandas por ordem juízos diversos, dentre eles duas penhoras no rosto dos autos por ordem do Juízo da 2ª Vara do Trabalho de Sertãozinho (f. 9.626-9 e 9.634-6).

A Administradora Judicial noticiou que constatou que existe confusão patrimonial entre as Recuperandas e a Smar Research (f. 2.808-10 e 3.072).

Leilão judicial foi designado, por decisão proferida em 25/07/2015, para a alienação de imóvel da matrícula imobiliária 7.166 do Cartório de Imóveis de Sertãozinho, pelo valor de R$ 12.500,00, em cumprimento do Plano de Recuperação Judicial (f. 3.449-51). Esse leilão, contudo, foi negativo por falta de ofertante (f. 4.023). Em seguida, ocorreu nova tentativa de alienação do imóvel mencionado por oferta pública com propostas fechadas pelo valor mínimo de R$ 12.500,00 (f. 4.234-5 e 4.550), mas a tentativa foi infrutífera por falta de ofertante (f. 4.805).

Por solicitação da Administradora Judicial, foi convocada Assembleia Geral de Credores para 09/06/2016 e, em segunda convocação, para 10/06/2016, para avaliação e deliberação acerca da execução do Plano de Recuperação Judicial (f. 4.628).

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

A Assembleia Geral de Credores, em 16/06/2016, (*i*) deliberou pela constituição de Comitê de Credores, de Comitê de Gestores e de uma Ouvidoria, e tomou conhecimento (*ii*) de que não existia disponibilidade de caixa para pagamento dos credores trabalhistas sujeitos ao Plano de Recuperação Judicial, e (*iii*) de que existia débito de IPTU incidente sobre o imóvel (f. 4.865); em 27/06/2016, continuando os trabalhos, (*iv*) elegeu os membros do Comitê Gestor, do Comitê de Credores e da Ouvidoria (f. 5.124); o Comitê de Credores e a Ouvidoria foram constituídos por decisão judicial (f. 6.730-1); prosseguindo os trabalhos, em 11/07/2016, a Assembleia Geral de Credores (*v*) ratificou por unanimidade a decisão judicial proferida em incidente, Processo Digital 0004648-22.2016.8.26.0597, que destituiu os administradores estatutários e nomeou um Comitê Gestor com mandato até 30/01/2017 (f. 5.438); em 12/08/2016, (*vi*) alterou cláusula do Plano de Recuperação Judicial e reduziu o valor mínimo para a alienação do imóvel e (*vii*) prorrogou o mandato dos membros do Comitê Gestor (f. 5.724-34), o que foi homologado por decisão judicial (f. 5984-5); em 02/09/2016 e 16/09/2016, nada deliberou (f. 6.077 e 6.244); em 03/10/2016 (*viii*) aprovou proposta alternativa de pagamento dos credores da classe I (f. 6.244), deliberação que foi homologada (f. 6.593); em 11/11/2016, acolheu proposta da Administradora Judicial e (*ix*) determinou que o Comitê Gestor apresentasse relatórios, informações e propostas para a alienação do imóvel como unidade produtiva isolada – UPI ou a sua dação em pagamento aos credores trabalhistas sujeitos ao Plano de Recuperação Judicial e, na mesma data, (*x*) constituiu junta jurídica para defesa dos interesses dos credores e assessoramento do respectivo comitê (f. 6.626), deliberação que foi homologada (f. 6.730-1); em 02/12/2016, o Comitê Gestor apresentou informações e relatório de suas atividades, com isso, a Assembleia Geral de Credores (*xi*) tomou conhecimento de que os salários dos empregados estavam atrasados e que a proposta alternativa de pagamento dos credores da classe I não foi cumprida e (*xii*) decidiu suspender o pagamento de pró-labore aos sócios (f. 6.782), o que foi homologado por decisão judicial (f. 6.913); em 30/01/2017, em cumprimento a requisição da Administradora Judicial, vários documentos foram apresentados sobre os custos de encerramento da a-

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

tividade, dados das patentes e das empresas estrangeiras, dos contratos em curso e do efetivo valor dos ativos, etc., com isso, a assembleia determinou que o Comitê Gestor apresentasse relatório final em 17/02/2017, na sede da Administradora Judicial, instruído com todos os elementos, documentos e informações acerca da viabilidade econômica das Recuperandas (f. 7.622).

O Egrégio Tribunal de Justiça do Estado de São Paulo, por v. Acórdão, alterando decisão anterior, mandou incluir as Recuperandas no regime fiscal especial (f. 5.399 e 9.466-73). As Recuperandas foram dispensadas, pela Instância Superior, de apresentação de certidão negativa para participar de licitação (f. 6.944).

O Petróleo Brasileiro S.A. - Petrobras informou que cadastrou as Recuperandas para negócio (f. 8.551).

A Administradora Judicial, em diligência realizada em 20/02/2017, obteve relatório de viabilidade e de *valuation*, laudo e diagnostico contábil fiscal, balanços e cédulas de ajustes e, no mesmo ato, tomou conhecimento de requerimentos dos credores e de funcionários e, em seguida, peticionou solicitando a designação de audiência de gestão democrática (f. 8.285).

Decisão judicial acolheu o requerimento da Administradora Judicial e designou o dia 12/04/2014 para a realização de audiência de gestão democrática (f. 8.607). Na audiência, dentre outras pessoas, falaram (*i*) Libânio Carlos de Souza, Presidente do Comitê Gestor, que fez esclarecimento acerca da gestão e apresentou proposta de falência com continuidade de negócios por meio de uma unidade produtiva isolada - UPI, que deveria ser denominada de Nova Smar, com adjudicação dessa nova empresa para todos os credores da classe I; (*ii*) Samuel Márcio Marquiti, Presidente do Sindicato dos Trabalhadores das Indústrias Metalúrgicas de Sertãozinho e Região, e Doutor Jorge Augusto Roque Souza, advogado do sindicato, que se manifestaram e concordaram com a proposta do Comitê Gestor; (*iii*) José Leandro Ciofi, Perito Contador, e Kelly Cristina Vieira, Consultara de Desenvolvimento Humano e Organizacional, que apresentaram suas análises sobre a atividade das empresas e sobre a proposta do Comitê Gestor; (*iv*) Ricardo Aparecido Leite, membro do Comitê de Credores, e os Doutores

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

Aguinaldo Biffi e Eduardo Martinucci, assessores jurídicos do comitê, que apresentaram suas considerações (f. 8662-73).

O Comitê de Credores apresentou manifestações por escrito acerca do plano de negócio e do estatuto social apresentado pelo Comitê Gestor (f. 9.093-280 e 9.415-37).

A Administradora Judicial comunicou haver recebido denúncia de Libânio Carlos de Souza, Presidente do Comitê Gestor, de que vidros especiais utilizados na confecção do potinho do sensor capacitivo de propriedade das Recuperandas foram desviados (f. 9.285). O Comitê Gestor, em 14/07/2017, denunciou o desvio de ativos das empresas estrangeiras do Grupo Smar (f. 9.525-624).

A Administradora Judicial manifestou-se favoravelmente a proposta de constituição de uma unidade de produção isolada - UPI com convolação da recuperação judicial em falência e juntou nos autos dois termos de diligência nos quais o Comitê Gestor, o Comitê de Credores e sua junta de assessores jurídicos acordaram em vários pontos importantes (f. 9.313-69 e 9.408-12).

Vieram para os autos esclarecimentos do Comitê Gestor a respeito de saldo de salários pendentes de Guilherme José Moretti (f. 9.371-9).

O Doutor Promotor de Justiça tomou ciência de todo o processado (f. 9.384).

### É O RELATÓRIO.
### FUNDAMENTO E DECIDO.

A impossibilidade da continuação das atividades das Recuperandas e o insucesso da recuperação judicial ficaram bastante claros na audiência de gestão democrática. Nenhum dos presentes, e eram muitos, discordou do diagnóstico apresentado pelo Comitê Gestor. As Recuperandas não possuem capacidade econômica e financeira para liquidar as dívidas extraconcursais e os compromissos assumidos com o Plano de Recuperação Judicial. A bem da verdade esse plano era inviável, porque condicionava o pagamento dos credores da classe I à alienação de um imóvel, evento futuro e incerto. As Recuperandas, desde as fracassadas da tentativa de alienação, não foram capazes de apresentar uma alter-

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

nativa viável para seguir com a recuperação judicial.

À impossibilidade econômica e financeira das Recuperandas soma-se a inviabilidade gerencial, pois os sócios não buscaram uma solução efetiva para a crise em que suas empresas estão de longa data, pelo menos desde a deflagração das investigações que culminaram com suas prisões e dos antigos sócios. O fato de os credores concursais, que em sua maioria são da classe I, estarem sem nenhuma perspectiva de receberem não os afetou, pois até mesmo abusaram do poder de mando para impedir que os trabalhos da Assembleia Geral de Credores prosseguissem com sucesso. Essa atitude levou à decisão judicial que os afastou e constituiu o Comitê de Gestor, Processo Digital 0004648-22.2016.8.26.0597. Ademais, no curso deste processo, foi apurado que havia necessidade de consertar as contabilidades das Recuperandas, que existe confusão patrimonial entre as Recuperandas e a Smar Research e que ativos foram desviados.

Apesar da inexequibilidade do Plano de Recuperação Judicial, é notável que os credores concursais, até a audiência de gestão democrática, não tenham demandado a falência das Recuperandas. A recusa em aceitar a quebra sabidamente decorre da confiança desses credores no empreendimento do Grupo Smar, até porque as Recuperandas, sem dúvida alguma, valem muito mais operando do que fechadas. Portanto, a proposta de criar uma Unidade Produtiva Isolada – UPI em continuidade de negócios além de atender a vontade dos credores é a opção mais adequada tanto para preservar e otimizar a utilização produtiva dos bens, ativos e recursos produtivos, inclusive os intangíveis, das Falidas como para a realização dos ativos (LRF, arts. 75, *caput*, 144 e 145).

Com efeito, o Grupo Smar é destaque nacional na fabricação de aparelhos e equipamentos de medida, testes e controle e atividade secundária de instalação de máquinas e equipamentos industriais (f. 8.862). Por isso, o Comitê Gestor elaborou o "Plano de Negócio Nova Smar" que reestrutura o grupo na forma de Unidade Produtiva Isolada – UPI, subsidiária integral, denominada "Nova Smar S/A", com a eliminação dos pontos falhos de gestão das Recuperandas e a implantação de uma nova estratégia baseada em rigor financeiro, comercial e operacional para balizar os processos e subprocessos da nova empresa

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 .
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
**COMARCA DE SERTÃOZINHO**
FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

(f. 8.879-930). Esse plano teve como base o "Parecer Conclusivo de Viabilidade de Negócios" apresentado pela JL Business, empresa externa e autônoma, que sugeriu, com fundamento em um *benchmarking* setorial, uma nova composição de receitas, custos e fluxo de caixa livres a fim de gerar resultados positivos (f. 8.860-77). Os documentos mencionados, expostos e amplamente discutidos na audiência de gestão democrática, demonstram que a Nova Smar S/A, livre dos ônus e dos passivos absolutamente anômalos das Recuperandas, com um pensado desenho organizacional (f. 8.991-9.008), tem grandes chances de conquistar posição relevante no mercado e tornar-se valiosa.

Os membros do Comitê Gestor, à evidência, devem assumir a diretoria da Nova Smar S/A, pois mostraram que são de confiança, que conhecem o negócio e que estão empenhados em levar adiante o empreendimento. As dificuldades que encontraram decorrem da insolvência das Recuperandas. De mais a mais, como ajudaram a conceber a Nova Smar S/A, ninguém melhor que eles para formarem a nova companhia. Desse modo, as objeções do Comitê de Credores são superáveis, mesmo porque este não é o momento para alterações que possam surpreender os clientes das Recuperandas e o mercado.

Os estudos exibidos pelo Comitê de Credores são muito interessantes. Contudo, o modelo "dualista de gestão" não é conveniente para essa fase em que a gestão está sob fiscalização judicial e, eventualmente, da Assembleia Geral de Credores. Isso porque é necessário, por ora, ter um núcleo decisório pequeno para tornar viável a cobrança de responsabilidade. Quando a Nova Smar S/A for alienada, os sócios terão liberdade para alterarem o estatuto.

A realização dos ativos e a forma de alienação da Nova Smar S/A e demais assuntos correlatos serão decididos oportunamente, conforme as questões se apresentarem.

Contudo, fica registrado que não é possível mais adjudicar o imóvel da matrícula imobiliária 7.166 do Cartório de Imóveis de Sertãozinho aos credores da recuperação judicial porque isso afrontaria as regras da falência.

Ante o exposto, e por mais que dos autos consta, <u>nesta data, às 15 horas,</u>

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

com fundamento no art. 73, IV, da Lei 11.101, de 9 de fevereiro de 2005, **CONVOLO** em falência a recuperação judicial do grupo formado pelas empresas **SMAR EQUIPAMENTOS INDUSTRIAIS LTDA.**, CNPJ 46.761.730/0001-06 – IE 664.010.689.118 – NIRE 35.201.047.101, localizada na Rua Augusto Zanini, 895, Jardim Sumaré, Sertãozinho (SP), CEP 14.170-550, tendo como sócios Mauro Sponchiado, brasileiro, casado, industrial, nascido em 18/02/1944, CPF 542.083.518-53 – RG 5.660.490-7 SSP/SP, e Edmundo Rocha Gorini, brasileiro, solteiro, engenheiro eletricista, nascido em 02/01/1951, CPF 140.244.036-72 – RG 8.211.889-9 SSP/SP, **SMAR COMERCIAL LTDA.**, CNPJ 74.379.686/0001-00 – IR 664.048.686.110 – NIRE 35.212.084.967, localizada na Rua Doutor Antônio Furlan Júnior, 784, Bairro Jardim Golive, Sertãozinho (SP), CEP 14170-480, tendo como sócios Mauro Sponchiado, brasileiro, casado, industrial, nascido em 18/02/1944, CPF 542.083.518-53 – RG 5.660.490-7 SSP/SP, e Edmundo Rocha Gorini, brasileiro, solteiro, engenheiro eletricista, nascido em 02/01/1951, CPF 140.244.036-72 – RG 8.211.889-9 SSP/SP, e **VALBLOCK INDÚSTRIA E COMÉRCIO LTDA.**, CNPJ 00.169.338/0001-71 – NIRE 35.212.468.668, localizada na Avenida Egisto Sicchieri, 146, Jardim Athenas, Sertãozinho (SP), CEP 14.161-000, tendo como sócios Mauro Sponchiado, brasileiro, casado, industrial, nascido em 18/02/1944, CPF 542.083.518-53 – RG 5.660.490-7 SSP/SP, Edmundo Rocha Gorini, brasileiro, solteiro, engenheiro eletricista, nascido em 02/01/1951, CPF 140.244.036-72 – RG 8.211.889-9 SSP/SP e Equipamentos Industriais Ltda., CNPJ 46.761.730/0001-06 – IE 664.010.689.118 – NIRE 35.201.047.101, e **fixo** o termo legal no 90º dia do pedido de recuperação judicial (Lei 11.101/2005, art. 99, II).

    **Mantenho** a Administradora Judicial Pró-Brasil Serviços em Recuperação de Empresas EIRELI EPP, CNPJ 15.324.876/0001-60, representada pelo Doutor Ricardo Hasson Sayeg, situada Rua Itaquera, 384, sala 01, Pacaembu, CEP 01246-030, São Paulo (SP), já compromissado no início do processo.

    **Acolho** a proposta exposta pelo Comitê Judicial de Gestores na audiência de gestão democrática, aprovada pelos presentes, e nos termos do arts. 144 e 145 da Lei 11.101, de 9 de fevereiro de 2005, **constituo** a Unidade de Produção

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
**COMARCA DE SERTÃOZINHO**
FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

Isolada — UPI denominada de **Nova Smar S/A**, sociedade anônima de capital fechado, subsidiária integral, com capital social de R$ 28.172.742,00, conforme Avaliação Econômica Financeira elaborada de acordo com a metodologia de Fluxo de Caixa Descontado ao Acionista — FCA, *Valuation* (f. 8.972-87), subscrito por todos os bens corpóreos e incorpóreos de acordo com o Inventário de Ativos (f. 8.939-68), com **exceção** do imóvel da matrícula imobiliária 7.166 do Cartório de Imóveis de Sertãozinho (SP) **E** do crédito do depósito judicial no valor histórico de R$ 10.969.888,92, **devendo** haver conferência dos bens das empresas (corpóreos e incorpóreos), adotando-se como estatuto social o projeto apresentado pelo Comitê Gestor na mencionada audiência (f. 8.932-7), UPI que deve ser gerida em regime de continuidade de negócios, sem interrupção das atividades das Falidas, conforme Plano de Negócios apresentado em audiência (f. 8.879-930), e de acordo com a Proposta de Estruturação Organizacional também apresentado em audiência (f. 8.991-9008); **nomeio** como seus diretores, por três anos, os atuais membros do Comitê Gestor — (***i***) Libânio Carlos de Souza, engenheiro eletrônico, CPF 087.435.918-09 - RG 37.334.268-8 SSP/SP; (***ii***) Rogério Lima de Souza, operador de máquinas, CPF 315.832.018-58 - RG 45.260.802-8 SSP/SP; e (***iii***) Ricardo Max Kowalski Argolo, engenheiro eletricista, CPF 390.786.635-53 - RG 3.099.876-01 SSP/BA, os quais devem (***a***) apresentar a declaração prevista no art. 37, II, da Lei 8.934, de 18 de novembro de 1994, e (***b***) ser compromissados de bem e fielmente desempenhar o cargo de diretor da Nova Smar S/A, sob a fiscalização deste Juízo e da Administradora Judicial; e **nomeio** os atuais membros do Comitê de Credores para o Conselho Fiscal — (***i***) Joel Gonçalves de Oliveira Sobrinho, brasileiro, casado, industriário, CPF 730.146.488-68 — RG 7.424.238; (***ii***) Marcos José Sicchieri, brasileiro, casado, encarregado de caldeiraria e mecânica, CPF 074.792.698-03 — RG 14.530.278-7; e (***iii***) Ricardo José Aparecido Leite, brasileiro, divorciado, engenheiro eletrônico, CPF 450.118.936-34 — RG 12.159.033-1, os quais devem ser compromissados de bem e fielmente desempenhar o cargo de membro do conselho Fiscal da Nova Smar S/A.

A Nova Smar S/A, em regime de continuidade de negócio, passa a ser

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
**COMARCA DE SERTÃOZINHO**
FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

titular dos contratos celebrados pelas Falidas com fornecedores, prestadores de serviço, instituições financeiras e clientes.

**Deverá** a serventia autuar em separado esta decisão a fim de instaurar incidente com número próprio para acompanhamento dos demais atos necessários para a constituição da Unidade Produtiva Isolada – UPI denominada Nova Smar S/A, assim como a para a fiscalização da gestão da nova empresa. **Deverá** ainda a serventia certificar nestes autos o cumprimento desse item e publicar para conhecimento dos interessados.

Oficie-se à Junta Comercial para **requisitar** que arquive esta decisão constitutiva da Nova Smar S/A e seu estatuto social, aprovado nesta, e atribua à empresa Número de Identificação do Registro de Empresas – NIRE, nos termos do parágrafo único do art. 2º da Lei 8.934, de 18 de novembro de 1994. **Deverão** os diretores nomeados cuidar para que esse arquivamento seja feito o mais rápido possível, assim como regularizar a situação da nova empresa na Receita Federal e demais órgãos, requerendo o necessário a este Juízo.

A arrecadação deve recair sobre o imóvel da matrícula imobiliária 7.166 do Cartório de Imóveis de Sertãozinho (SP), o crédito do depósito judicial no valor histórico de R$ 10.969.888,92, as ações da Nova Smar S/A, bem como os documentos e livros das Falidas, nos termos do art. 108 e seguintes da Lei 11.101, de 9 de fevereiro de 2005.

**Ordeno** a suspensão de todas as ações ou execuções contra as falidas (*i*) Smar Equipamentos Industriais Ltda., (*ii*) Smar Comercial Ltda. e (*iii*) Valblock Indústria e Comércio Ltda., nos termos do art. 99, V, da Lei 11.101, de 9 de fevereiro de 2005, ressalvadas as hipóteses previstas nos §§ 1º e 2º do art. 6º da mesma lei, e **suspendo** o curso da prescrição.

A decretação da falência torna este Juízo da 2ª Vara Cível de Sertãozinho indivisível e competente para conhecer todas as ações sobre bens, interesses e negócios das Falidas, ressalvadas as causas trabalhistas, fiscais e aquelas não reguladas na Lei 11.101, de 9 de fevereiro de 2005, em que as Falidas figurarem como autoras ou litisconsortes ativos.

Todas as ações terão prosseguimento com a Administradora Judicial,

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
**COMARCA DE SERTÃOZINHO**
FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

que deverá ser intimada para representar a Massa Falida, sob pena de nulidade do processo.

**Proíbo** a prática de qualquer ato de disposição ou oneração de bens das falidas (*i*) Smar Equipamentos Industriais Ltda., (*ii*) Smar Comercial Ltda. e (*iii*) Valblock Indústria e Comércio Ltda., sem autorização judicial e do Comitê de Credores, ressalvados os bens cuja venda faça parte das atividades da Unidade de Produção Isolada    UPI - **Nova Smar S/A.**

**Oficie-se** à Junta Comercial para requisitar que proceda à anotação da falência no registro da (*i*) Smar Equipamentos Industriais Ltda., (*ii*) Smar Comercial Ltda. e (*iii*) Valblock Indústria e Comércio Ltda., para que conste a expressão "Falido", a data da decretação da falência e a inabilitação de que trata o art. 102 da Lei 11.101, de 9 de fevereiro de 2005.

**Intime-se** o Ministério Público e a **comuniquem-se** por carta às Fazendas Pública Federal e as de todos os Estados e Municípios em que as Falidas tiverem estabelecimento, assim como as Varas do Trabalho correspondentes, para que tomem conhecimento da falência.

**Publique-se** edital com a íntegra desta decisão, **assim** que apresentada a relação de credores, conforme art. 99, parágrafo único, da Lei 11.101, de 9 de fevereiro de 2005. **Fixo** o prazo de 15 dias da publicação do edital para que os credores apresentem à Administradora Judicial suas habilitações ou suas divergências quanto aos créditos relacionados, de acordo com o art. 7º, § 1º, da lei mencionada, **ressalvados** os já habilitados.

**Int. Cumpra-se.**

Sertãozinho (SP), 24 de outubro de 2017

**Marcelo Asdrúbal Augusto Gama**
Juiz de Direito

Assinatura digital, nos termos da Lei 11.419/2006,
conforme impressão à margem direita

SANDRA REGINA MATTOS RUDZIT
Tradutora Pública
Intérprete Comercial
São Paulo

01 FEV 2019   1   - 48965

Este documento é cópia do original, assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA, liberado nos autos em 24/10/2017 às 14:38 . Para conferir o original, acesse o site https://esaj.tjsp.jus.br/pastadigital/pg/abrirConferenciaDocumento.do, informe o processo 0010153-96.2013.8.26.0597 e código GL0000001RIUF.

# EXHIBIT "3"

**Maria Cláudia Santos Ribeiro Ratto**

*TRADUTORA PÚBLICA*

*I, Maria Cláudia Santos Ribeiro Ratto, certified public translator, duly admitted and sworn by the Commercial Registry of the State of São Paulo, Brazil, hereby certify that a document was submitted to me, written in Portuguese, the translation of which is as follows:*

## STATE OF SÃO PAULO COURT OF APPEALS

## JUDICIAL DISTRICT OF SERTÃOZINHO

COURTHOUSE OF SERTÃOZINHO - 2nd LOWER CIVIL COURT

### DECISION

Claimant(s): **BL-CONSULTORIA E PARTICIPAÇÕES RIBEIRÃO PRETO S/S/ LTDA**

Case: 0004272-65.2018.8.26.0597

**1.** The Bankruptcy Trustee, BDPRO Consortium, and its assistant, BL Consultoria e Participações Ribeirão Preto S/S, informed that the Federal Public Prosecutors' Office identified the existence of indications that the former controllers and managers of the companies of the Group Smar Equipamentos Industriais Ltda. are involved in criminal activities such as fraud in foreign trade, tax evasion, irregular remittance of money abroad, money laundering, misrepresentation, misconduct, and corruption of public officials (pages 103-7).

**2.** In the main bankruptcy proceedings, Physical Proceeding 001015396.2013.8.26.0597, and in the incident in which, by judicial decision, even when processing the Judicial Reorganization, the managers of Smar Group appointed under the by-Laws were dismissed from the conduct of business activities, Digital Proceeding 0004648-22.2016.8.26.0597, there are elements that several affiliates or subsidiaries have been created abroad. The Bankruptcy Trustee and its assistant have indicated that the principal ones are Smar Research Company (USA) and Smar International Corporation (USA).

**3.** Smar Research Company, as shown in the statements provided, has at least 22 patents registered with the United States Department of Patents and Trademarks Office (pgs. 126-56). These patents refer to industrial automation systems and processes, the main product of Smar Group. Most of the inventors in the patents are or were employed by Smar Group. This is an indication that the former controllers and managers have diverted assets from Smar Group abroad.

**4.** Therefore, it is absolutely necessary to file for auxiliary bankruptcy in the United States of America (USA), according to the transactional legal strategy defined by Duarte Forssell Sociedade de Advogados (pages 108-13), therefore, the requests and claims made by the Bankruptcy Trustee and its assistant must be accepted (pages 103-7).

**5.** Having said that, *(i)* **I authorize** the filing of an auxiliary bankruptcy petition in the United States of America (USA) under *Chapter 15 Ancillary and Other Cross-Border Cases, Title 11 – Bankruptcy,* of the *United States Code,* by Bankruptcy Estate of the economic group formed by Smar Equipamentos Industriais Ltda., Smar Comercial Ltda. and Valblock Indústria e Comércio Ltda., *(ii)* **I appoint** BL Consultoria e Participações Ribeirão Preto S/S Ltda., by its legal representative Alexandre Borges Leite, enrolled with the Individual Taxpayers' Register (CPF) 828.643.736-53, a foreign representative of the mentioned Bankruptcy Estate with powers of representation abroad, and especially in the United States of America, *(iii)* **I authorize** that the law firm Sequor Law be retained, according to the letter of appointment shown in the case records (pages 158-68), the costs of which shall be borne by Duarte Forssell Sociedade de Advogados (pages 108-12 and 172-80), and *(iv)* **I authorize** the foreign representative to sign the *Drawbridge Agreement* (pages 180-1) and transfer an amount equivalent to US\$1,500.00 to the client's account to be held with Sequor Law firm, and the Bankruptcy Bank shall reimburse it once the corresponding vouchers have been presented.

**Tradução nº I-48421**
**Livro nº 355**
**Folha  29**

Maria Claudia Santos Ribeiro Ratto

*TRADUTORA PÚBLICA*

**6.** After the bankruptcy proceedings abroad have ended, the US$1,500.00 **shall be** returned to the Bankruptcy Estate. All other costs and expenses of foreign proceedings **shall be** borne by the Duarte Forssell Law Firm (pages 108-12 and 172-80).

**7. Notify the** Prosecutor. **Notify. Comply.**

Sertãozinho (SP), December 19, 2018

### Marcelo Asdrúbal Augusto Gama

### - Judge -

Digital signature, pursuant to Law 11.419/2006, as printed on the right margin

0004272-65.2018.8.26.0597

This document is a copy of the original document digitally signed by MARCELO ASDRUBAL AUGUSTO GAMA. To access the procedural documents, go to http://esaj.tjsp.jus.br/esaj, inform the process 0004272-65.2018.8.26.0597 and the code GL00000026SZZ.
*IN WITNESS WHEREOF I set my hand and seal to this translation.*

*São Paulo, February 4, 2019*

MARIA CLÁUDIA SANTOS RIBEIRO RATTO
Tradutora Pública

jms/200555.doc

MARIA CLÁUDIA SANTOS RIBEIRO RATTO - Tradutora Pública e Intérprete Comercial - Português - Inglês - Matrícula na JUCESP nº 1287 - CPF 935.223.988-15 - RG 5.302.029
Rua Matias Aires, 402 - 9º andar - 01309-020 - São Paulo - SP - Brasil - Tel. 55-11-3155-7383 - Fax. 55-11-3155-7388 - e-mail: just@just.trd.br - www.just.trd.br



 **TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

---

| **DECISÃO** |
| --- |

Requerente(s) : **BL-CONSULTORIA E PARTICIPAÇÕES RIBEIRÃO PRE-TO S/S/ LTDA**

Processo : 0004272-65.2018.8.26.0597

**1.-** O Administrador Judicial, Consórcio BDPRO, e sua auxiliar, BL Consultoria e Participações Ribeirão Preto S/S, informaram que o Ministério Público Federal identificou a existência de indícios de que os ex-controladores e administradores das sociedades do Grupo Smar Equipamento Industriais Ltda. estão envolvidos em atividades criminosas, tais como fraudes em comércio exterior, sonegação fiscal, remessa irregular de numerário ao exterior, lavagem de dinheiro, falsidade ideológica, descaminho e corrupção de agentes públicos (f. 103-7).

**2.-** Nos autos principais da falência, Processo Físico 0010153-96.2013.8.26.0597, e no incidente em que, por decisão judicial, ainda quando tramitava a Recuperação Judicial, os administradores estatutários do Grupo Smar foram destituídos da condução das atividades empresariais, Processo Digital 0004648-22.2016.8.26.0597, constam elementos de que foram criadas diversas afiliadas ou subsidiárias no exterior. O Administrador Judicial e sua auxiliar informaram que as principais são a Smar Research Company (EUA) e a Smar International Corporation (EUA)

**3.-** A Smar Research Company, conforme demonstram os extratos exibidos, possui ao menos 22 patentes registradas no Departamento de Patentes e Marcas dos Estados Unidos - *United States Patent and Trademark Office* (f. 126-56). Essas patentes referem-se a sistemas e processos de automação industrial, principal produto do Grupo Smar. A maioria dos inventores que constam das patentes é ou foi empregado do Grupo Smar. Ora, isso constitui indício de que os ex-controladores e administradores desviaram ativos do Grupo Smar no exterior.

**4.-** Portanto, é absolutamente necessário o ajuizamento de pedido de falência auxiliar nos Estados Unidos da América (USA), segundo a estratégia

MARIA CLÁUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo

Este documento é cópia do original assinado digitalmente por MARCELO ASDRUBAL AUGUSTO GAMA. Para acessar os autos processuais, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 0004272-65.2018.8.26.0597 e o código GL0000026SZZ.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**

**COMARCA DE SERTÃOZINHO**

FORO DE SERTÃOZINHO – 2ª VARA CÍVEL

jurídica transacional definida pelo escritório Duarte Forssell Sociedade de Advogados (f. 108-13), por isso, os requerimentos e pedidos formulados pelo Administrador Judicial e sua auxiliar devem ser acolhidos (f. 103-7).

**5.-** Posto isso, (*i*) **autorizo** o ajuizamento de pedido auxiliar de falência nos Estados Unidos da América (USA), sob o *Chapter 15 – Ancillary and Other Cross-Border Cases*, *Title 11 – Bankruptcy*, do *United States Code*, pela Massa Falida do grupo econômico formado pela Smar Equipamentos Industriais Ltda., Smar Comercial Ltda. e Valblock Indústria e Comércio Ltda., (*ii*) **nomeio** a BL Consultoria e Participações Ribeirão Preto S/S Ltda., na pessoa de seu representante legal Alexandre Borges Leite, CPF 828.643.736-53, representante estrangeiro, com poderes de representação no exterior e especialmente nos Estados Unidos da América (USA), da Massa Falida mencionada, (*iii*) **autorizo** a contratação do escritório de advocacia Sequor Law, conforme carta de contratação exibida nos autos (f. 158-68), cujos custos serão arcados pelo escritório Duarte Forssell Sociedade de Advogados (f. 108-12 e 172-80), e (*iv*) **autorizo** o representante estrangeiro a assinar o *Drawbridge Agreement* (f. 180-1), podendo transferir o equivalente a US\$ 1.500,00 para a conta de cliente a ser mantida com escritório de advocacia Sequor Law, devendo a Massa Falida reembolsá-lo, uma vez apresentados os comprovantes correspondentes.

**6.-** Findo o processo de falência auxiliar no estrangeiro, os US\$ 1.500,00 **deverão ser** restituídos à Massa Falida. Todos os demais custos e despesas dos procedimentos estrangeiros **deverão ser** suportados pelo escritório Duarte Forssell Sociedade de Advogados (f. 108-12 e 172-80).

**7.-** **Ciência** ao Doutor Promotor de Justiça.

**Int. Proceda-se.**

Sertãozinho (SP), 19 de dezembro de 2018

**Marcelo Asdrúbal Augusto Gama**
– Juiz de Direito –

Assinatura digital, nos termos da Lei 11.419/2006,
conforme impressão à margem direita

0004272-65.2018.8.26.0597

MARIA CLÁUDIA SANTOS RIBEIRO RATTO
Tradutora Pública
Intérprete Comercial
São Paulo

0 4 FEV 2019  |  -484 20

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SMAR EQUIPAMENTOS INDUSTRIAS LTDA,.          Chapter 15
SMAR COMERCIAL LTDA., and VALBLOCK
INDUSTRIA E COMERCIO LTDA.                                Case No.:

     Debtors in a Foreign Proceeding.
_____/

### RULE 7007.1 CORPORATE OWNERSHIP STATEMENT

Alexandre Borges Leite (the "Foreign Representative"), the duly appointed foreign representative of Smar Equipamentos Industrias Ltda., Smar Comercial Ltda., and Valblock Industria e Comercio Ltda. (the "Debtors"), hereby discloses the following:

1.    There are no entities that directly or indirectly own 10% or more of any class of the Debtor's equity interest.

2.    The corporate ownership of the Debtors is as follows:

A.  Smar Equipamentos Industrias Ltda. is owned 50% (3,090,000 shares) by Edmundo Rocha Gorini, and 50% (3,090,000 shares) Mauro Sponchiado.

B.  Smar Comercial Ltda. is owned 50% (2,100 ,000 shares) by Edmundo Rocha Gorini, and 50% (2,100,000 shares) Mauro Sponchiado.

C.  Valblock Industria e Comercio Ltda. is owned 99.50% by Antônio José Zamproni, and the remaining 0.50% are held in reserve by the company.

[THIS PORTION INTENTIONALLY LEFT BLANK]

Dated: February 28, 2019          Respectfully submitted,

**SEQUOR LAW, P.A.**
1001 Brickell Bay Dr., 9th Floor
Miami, Florida 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
          bdecamargo@sequorlaw.com


By:    */s/* Leyza F. Blanco
        Leyza F. Blanco
        Florida Bar No.: 104639
        Bruno de Camargo
        Florida Bar No.: 117588

# EXHIBIT "C"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

SMAR EQUIPAMENTOS INDUSTRIAS LTDA,.        Chapter 15
SMAR COMERCIAL LTDA., and VALBLOCK
INDUSTRIA E COMERCIO LTDA.                          Case No.:

       Debtors in a Foreign Proceeding.
_____/

**ORDER GRANTING RECOGNITION OF FOREIGN**
**MAIN PROCEEDING PURSUANT TO §§ 1515 AND 1517 OF**
**THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

       This matter came on for hearing on _____ _____, 2019 (the "Hearing"), upon the

Verified Petition for Recognition of Foreign Main Proceeding Pursuant To §§1515 and 1517 (the

"Verified Motion")[1] [ECF No. ____], of Alexandre Borges Leite ("Foreign Representative"), the

duly appointed Foreign Representative of Smar Equipamentos Industrias Ltda., Smar Comercial

Ltda., and Valblock Industria e Comercio Ltda. (the "Debtors"), seeking recognition and related

relief pursuant to Chapter 15 of the Bankruptcy Code of the Debtor's court-approved bankruptcy

pending before the Second Civil Court of Sertãozinho, São Paulo, Brazil (the "Brazilian Court"),

Case No. 0010153-96.2013.8.26.0597 (the "Brazilian Proceeding").  The Court, having considered

the Petition, the Verified Motion, and their respective attachments, the argument of counsel, and

being otherwise duly informed, the Court makes the following Order.

       The Court finds:

_____

[1]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Verified Motion.

A.      Due and timely notice of the filing of the Chapter 15 Petition and the Hearing was given by the Foreign Representative as directed by this Court.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 109 and 1501.

C.      Venue of this proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1410.

D.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

E.      The Foreign Representative qualifies as a "foreign representative" as defined in 11 U.S.C. §101(24).

F.      This Chapter 15 case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1515 and 1517.

G.      Foreign Representative has met the requirements of 11 U.S.C. §§ 1515(b), 1515(c), 1515(d), and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

H.      The Brazilian Proceeding is a foreign proceeding under 11 U.S.C. §§ 101(23) and 1502(4).

I.      The Brazilian Proceeding is entitled to recognition by this Court under 11 U.S.C. § 1517.

J.      The Brazilian Proceeding is pending in the city of Sertãozinho, in the State of São Paulo, Brazil.  Brazil is the country where the Debtors have their centers of main interests and, accordingly, the Brazilian Proceeding is a foreign main proceeding under 11 U.S.C. § 1502(4), entitled to recognition as a foreign main proceeding under 11 U.S.C. § 1517(b)(1).

K.      The Foreign Representative is entitled to all relief provided under 11 U.S.C. § 1520.

L.     The Foreign Representative is further entitled to the relief expressly set forth in 11 U.S.C. § 1521.

M.     The relief granted by this Order is necessary and appropriate, in the interests of public and international comity, consistent with the public policy of the United States, warranted pursuant to 11 U.S.C. § 1521 and will not cause any hardship to the creditors of the Debtors or other parties that is not outweighed by the benefits of the relief being granted.

Accordingly, it is ORDERED AND ADJUDGED that:

1.     The Brazilian Proceeding is granted recognition as a "foreign main proceeding" under 11 U.S.C. § 1517.

2.     The Brazilian Proceeding and the Orders of the Brazilian Court shall be given full force and effect and be binding on and enforceable in the United States against all persons and entities.  This includes without limitation, the Orders attached to the Verified Motion commencing the Brazilian Proceeding and appointing the Foreign Representative as Judicial Manager and Foreign Representative.

3.     The Foreign Representative is entrusted with the full administration and realization of all or a part of the estate and assets of the Debtors within the territorial jurisdiction of the United States.

4.     The Foreign Representative shall have the authority to act independently to carry out any of the duties and powers granted by this Order.

5.     The provisions of 11 U.S.C. § 1520 apply to this proceeding.

6.     All persons and entities are stayed from commencing or continuing any action or proceeding concerning the assets, rights, obligations or liabilities, of the Debtors or the Debtors' bankruptcy estate located in the United States.

7.      All persons and entities are stayed from executing against the assets of the Debtors
or the Debtors' bankruptcy estate located in the United States.

8.      All persons and entities are prohibited from transferring, encumbering or otherwise
disposing of, any assets of the Debtors or the Debtors' bankruptcy estate located in the United
States.

9.      All persons and entities provided notice of the Chapter 15 Petition and the Hearing
thereon who are in possession, custody or control of property, or the proceeds thereof, of the
Debtors or the Debtors' bankruptcy estate located within the territorial jurisdiction of the United
States, shall immediately advise the Foreign Representative by written notice sent to the following
addresses:

Attn: Alexandre Borges Leite
Rua Aldo Focosi, 420
Bairro Presidente Médici – Unidade 52
Ribeirão Preto, São Paulo, Brazil
CEP 14091-310

With a copy to:

Attn: Leyza F. Blanco
Bruno de Camargo
Sequor Law, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131

which written notice shall set forth: (i) the nature of such property or proceeds; (ii) when and
how such property or proceeds came into the custody, possession or control of such person or
entity; and (iii) the full identity and contact information for such person or entity.

10.     The Foreign Representative is authorized to examine witnesses, take evidence or
seek the delivery of information concerning the assets, affairs, rights, obligations or liabilities of
the Debtors or the Debtors' bankruptcy estate pursuant to §1521(a)(4), the Federal Rules of

Bankruptcy Procedure, including without limitation the procedure of Fed. R. Bankr. P. 2004 and Local Rule 2004-1, without further order of this Court.

11.    The Foreign Representative is further authorized to operate and may exercise the powers of a trustee under, and to the extent provided by 11 U.S.C. §§ 363 and 552.

12.    This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding brought in and through this Chapter 15 case, and any request by any person or entity for relief from the provisions of this Order.

13.    This Court shall retain jurisdiction with respect to the administration, realization, and distribution of the assets of the Debtors within the territorial jurisdiction of the United States.

14.    The Foreign Representative is directed to serve a true and correct copy of this Order by electronic filing via the CM/ECF system with the Clerk of Court upon those persons or entities who have appeared by counsel and requested electronic notification of filings in this case and United States mail, first class postage prepaid, upon any other known creditors in the United States, and any other person or entity known to have dominion and control over assets of the Debtors in the United States, all of which shall be sufficient to give notice of this Order.

# # #

Submitted by:

Leyza F. Blanco, Esq.
Bruno de Camargo, Esq.
SEQUOR LAW
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Telephone: 305-372-8282
Facsimile: 305-372-8202
E-Mail: lblanco@sequorlaw.com
bdecamargo@sequorlaw.com

Bruno de Camargo shall serve a copy of this Order on all interested parties entitled to service and file a certificate of service thereafter.